UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHAIN MALDONATO,

                              Plaintiff,

                                                        9:17-CV-1303

v.

                                                        (BKS/TWD)

VIJAYKUMAR S. MANDALAYWALA, et al.,


                              Defendants.
_____

APPEARANCES:                          OF COUNSEL:

SHAIN MALDONATO
Plaintiff *pro se*
15-B-2138
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953

BARBARA D. UNDERWOOD              DAVID A. ROSENBERG, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**ORDER AND REPORT-RECOMMENDATION**</u>

## I.    INTRODUCTION

Plaintiff Shain Maldonato commenced this *pro se* civil rights action on November 29,

2017.  (Dkt. No. 1.)  On May 29, 2018, the Hon. Brenda K. Sannes, U.S. District Judge, granted

Plaintiff leave to file a second amended complaint.  (Dkt. No. 15.)  The Defendants and claims

remaining following *sua sponte* review of the second amended complaint by Judge Sannes are:

(1) Eighth Amendment medical indifference claims against Defendants Dr. Vijaykumar S. Mandalaywala ("Dr. Mandalaywala"), Jane Doe #1, and Jane Doe #2; (2) Eighth Amendment conditions of confinement claims against Jane Doe #1, and Jane Doe #2; and (3) Eighth Amendment excessive force claims against Defendant Corrections Officer ("CO") D. Bennett ("Bennett") and John Doe #1.[1]  (Dkt. No. 17 at 13.[2])

Defendants and Bennett have now moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for dismissal of Plaintiff's Eighth Amendment medical indifference claim against Dr. Mandalaywala for failure to state a claim, and his Eighth Amendment excessive force claim against Bennett for failure to exhaust. (Dkt. No. 24.)  Plaintiff has filed a sworn response to the motion.  (Dkt. No. 33.)  For reasons explained below, the Court recommends that Defendants' motion to dismiss be denied.

## II.    SECOND AMENDED COMPLAINT

### A.    Dr. Mandalaywala

On October 1, 2016, while Plaintiff was housed at Upstate Correctional Facility ("Upstate"), he was admitted to the Neurology Stroke Service at Albany Medical Center Hospital ("Albany Medical") where he was diagnosed with a left hemispheric stroke secondary to left MCA stenosis.  (Dkt. Nos. 15 at 4-5; 15-1 at 5.)  Plaintiff alleges that on October 19, 2016, while in the hospital, he was told that he needed physical and speech therapy.  (Dkt. No. 15 at 5.)

---

[1]  Because of the pendency of Plaintiff's claims against the "Doe" Defendants, the Superintendent of Great Meadow Correctional Facility has been named as a Defendant for service and discovery purposes only.  (Dkt. No. 26.)

[2]  Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

"Discharge Recommendations" in Plaintiff's Albany Medical Transfer Discharge Summary ("Discharge Summary") state "[t]he patient is to continue work with speech and swallowing pathologist . . . and to continue working with Physical and Occupational Therapy." (Dkt. No. 15-1 at 6.) However, an edit added to the Transfer Discharge Summary on October 20, 2016, by Nurse Practitioner ("NP") Yama Rasoully, indicates "PT/OT Discontinue  10/20/16  2:45 pm." *Id*. at 20. Plaintiff's Upstate progress notes, annexed as an exhibit to Plaintiff's second amended complaint, reference an October 20, 2016, telephone call between RN Reome of Upstate and Albany Medical regarding Plaintiff stating: "T.C. to Albany Medical Ctr. about Dysphagia, 4 diet [with] nectar thick liquids. States inmate's orders in hospital were thin liquids and can't go to an RMU needing only Speech Therapy.  PT/OT D/C'd 10/20/16." (Dkt. No. 15-1 at 24.)

Plaintiff was returned to Upstate on October 21, 2016, and placed in the infirmary. *Id.* Plaintiff's Upstate progress note for that date states that he ambulated to the infirmary independently without difficulty, and his speech was clear but he had some difficulty communicating at times, particularly if he attempted to speak too fast. *Id*. According to the October 21, 2016, progress notes, Plaintiff stated that an evaluation done at Albany Medical Center showed no need for speech, physical, or occupational therapy. *Id*. The notes indicated that Plaintiff would be kept in the infirmary over the weekend and would probably thereafter be discharged to the block by Dr. Kumar.[3] *Id*. The notes also disclosed that Plaintiff wanted to get

---

[3]  Defendants argue that Plaintiff has provided no basis for his claim that "Dr. Kumar" in the progress note is a reference to Defendant Dr. Vijaykumar S. Mandalaywala. (Dkt. No. 34 at 7.) The Court, however, finds it reasonable for purposes of this motion, to infer that Defendant is the "Dr. Kumar" in the progress note given the Defendant's first name. *See* H*ernandez*, 18 F.3d at 136 (reasonable inferences to be construed in plaintiff's favor on a motion to dismiss); see *also Reeder v. Young*, No. 9:16-CV-1129 (GTS/TWD), 2017 WL 564526, at *1 (N.D.N.Y. Feb. 13, 2017) and 2018 WL 1468655, at *1 (N.D.N.Y. Mar. 26, 2018) (Dr. Mandalaywala sued as "Dr.

back to his job in the law library.  *Id.*  Additional progress notes from October 21, 2016, indicate Plaintiff was able to get out of bed with no difficulty and had a normal gait.  *Id.*  The last progress note for October 21, 2016, provided by Plaintiff states that Plaintiff was able to speak clearly but in short one or two word sentences, and that he could answer yes or no questions.  *Id.*

In his notarized opposition to Defendants' motion to dismiss, Plaintiff contends that the only reason for the edit "PT/OT D/C'd 10/20/16" by NP Rasouly was that Plaintiff was leaving the hospital and would therefore no longer be having therapy there.  (Dkt. Nos. 15-1 at 24; 33 at 3.)  Plaintiff also denies stating he did not want physical or occupational therapy as stated in the progress notes and blames having been on medication and not being coherent at the time.  (Dkt. No. 33 at 4.)  Plaintiff claims in his opposition that contrary to the Upstate progress notes, his whole right side was debilitated, and he walked with extreme difficulty and pain.  *Id.*  According to Plaintiff, any observer could see he was clearly in distress and needed physical and occupational therapy.  *Id.*

Plaintiff alleges that Defendant Dr. Mandalaywala, the Department of Corrections and Community Supervision ("DOCCS") physician who was responsible for primary medical care at Upstate and was supervising physician to the medical staff, sent Plaintiff back to his cell on October 23, 2016.  (Dkt. Nos. 15 at 3, 5; 33 at 4.)  A nurse signed a bottom bunk permit for Plaintiff on October 27, 2016.  (Dkt. No. 33 at 4-5.)  Plaintiff claims to have made a request for a "flats" permit directly to Dr. Mandalaywala at the time he was sent back to his cell.  (Dkt. No. 33 at 4.)  Plaintiff was sent on a medical trip to Great Meadow Correctional Facility ("Great Meadow") on December 12, 2016, and returned to Upstate on December 26, 2016.  *Id.* at 5.

V. Kumar").

Upon his return, he made numerous attempts to obtain a flats permit, and a permit was finally issued on January 10, 2017. *Id*. at 5.

Plaintiff claims that Dr. Mandalaywala deprived him of his Eighth Amendment right to fair and adequate medical care. Dkt. No. 15 at 9.) According to Plaintiff, he never received physical or speech therapy, despite Dr. Mandalaywala having received documents from the hospital indicating he needed the therapy. *Id*. Plaintiff further claims that his Eighth Amendment rights were violated by Dr. Mandalaywala's failure to issue him a flats permit for several weeks after his return from the hospital. *Id*. Plaintiff alleges that the delay greatly exacerbated his physical pain initially brought on by the stroke. *Id*. at 10.

### B.    CO Bennett

On December 12, 2016, Plaintiff was placed on a medical trip to Great Meadow where CO Bennett was working. (Dkt. No. 15 at 3, 6.) On December 26, 2016, at approximately 8:00am, Bennett told Plaintiff to get ready for his return to Upstate. *Id*. at 7. The cell door was opened after the draft bag with Plaintiff's property was closed and zip tied. *Id.* Plaintiff alleges that Bennett told him to approach Bennett walking backwards, and when Plaintiff stood in front of the cell, Bennett told him to spread his legs and touch the gate above the cell entrance with his hands. *Id*. According to Plaintiff, at that time he was unable to extend his right arm or stretch his right leg. *Id*. Plaintiff claims that Bennett began yelling and making threats as Plaintiff did his best to communicate to Bennett that he was unable to do what was being asked because his right side was debilitated. *Id*. at 8.

Plaintiff alleges that John Doe #1 came over and hit Plaintiff on the back of the head and when he hit Plaintiff a second time, Plaintiff's vision went blank and he passed out. *Id*. Doe #1

hit Plaintiff again and grabbed Plaintiff by his underarm to keep him on his feet as Doe #1 kicked

Plaintiff's right foot to put it in the position they wanted. *Id*. Bennett then hit Plaintiff on the

back of the head yelling, "Stop being stubborn. Put your hand on the gate," as inmates were

yelling to stop beating on Plaintiff because he had just had a stroke. *Id*. When Doe #1 grabbed

Plaintiff's arm and pulled his hand upward until it touched the gate, Plaintiff felt a pain shoot

through his right side from ankle to wrist. *Id*. at 9. Bennett then said "You see, that wasn't

complicated." *Id*.

Plaintiff contends that Bennett was aware Plaintiff had recently suffered a stroke and had

paralysis, and that Bennett mocked, threatened and disrespected him in addition to hitting him in

the head after Doe #1 had hit him. *Id*. at 12. Plaintiff has asserted an Eighth Amendment

excessive force claim against Bennett.

## III.    LEGAL STANDARD GOVERNING RULE 12(b)(6) MOTIONS TO DISMISS

A defendant may move to dismiss a complaint "for failure to state a claim upon which

relief can be granted" under Rule 12(b)(6). The motion tests the formal legal sufficiency of the

complaint by determining whether it conforms to Federal Rule of Civil Procedure 8(a)(2), which

requires that a complaint include "a short and plain statement of the claim showing that the

pleader is entitled to relief." *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972). Satisfaction of

the requirement that a plaintiff "show" that he or she is entitled to relief requires that the

complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim

for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . .

[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted). "Factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. 555.

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Id.* at 570. While Rule 8(a)(2) "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me-accusation." *Iqbal,* 556 U.S. at 678 (citation and internal quotation marks omitted). A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Id.* (citation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly*).

On a motion to dismiss, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statement or documents incorporated in it by reference. *Cortec*

*Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("even where a document is not incorporated by reference [in the complaint], the court may nevertheless consider it [on a Rule 12(b)(6) motion without converting the motion to one for summary judgment] where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint," quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). The Court may also consider documents "possessed by or known to the plaintiff and upon which [he] relied in bringing the suit." *ASTI Communications, Inc. v. The Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). In addition, "the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual allegations are consistent with the allegations of the Plaintiff's complaint." *Robles v. Bleau*, No. 07-CV-0464, 2008 WL 4693153, at * 6 and n.41 (N.D.N.Y. Oct. 22, 2008)[4] (collecting cases).

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112 (citation omitted).

---

[4] The Court will provide Plaintiff with copies of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

## IV.    EIGHTH AMENDMENT MEDICAL INDIFFERENCE CLAIM AGAINST DR. MANDALAYWALA

### A.    Legal Standard

Claims that prison officials have intentionally disregarded an inmate's serious medical needs fall under the Eighth Amendment umbrella of protection from the imposition of cruel and unusual punishments. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Prison officials must ensure that inmates receive adequate medical care. *Id*. (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). A claim that a prison official has intentionally disregarded an inmate's serious medical needs has both objective and subjective elements. *See Hathaway v. Coughlin II*, 99 F.3d 550, 553 (2d Cir. 1996). The plaintiff must show that he had a serious medical condition and that it was met with deliberate indifference. *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (citation omitted). "[N]ot every lapse in medical care is a constitutional wrong. Rather, a prison official violates the Eighth Amendment only when the two requirements are met." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citation and internal quotation marks omitted).

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) (citations omitted); *accord Hathaway v. Coughlin I*, 37 F.3d 63, 66 (2d Cir. 1994);

9

*Chance,* 143 F.3d at 702.  Factors informing the inquiry into whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain.  *Chance,* 143 F.3d at 702-03.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation and internal quotation marks omitted).  To satisfy the subjective element of deliberate indifference, a plaintiff must establish the equivalent of criminal recklessness, *i.e.*, "that the charged official act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result."  *Salahuddin,* 467 F.3d at 280; *see also Farmer*, 511 U.S. at 837 ("[T]he official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

**B.    Analysis**

The Court assumes, solely for purposes of this motion, that Plaintiff's stroke constituted a serious medical condition.  Furthermore, for the reasons explained below, the Court finds that Plaintiff has made a plausible showing, for purposes of this motion, that Dr. Mandalaywala was personally involved in Plaintiff's post-stroke care and treatment, including the decision not to provide Plaintiff with physical or speech therapy and failing to grant his request for a flats permit for several weeks.

**1.    Physical and Speech Therapy**

Plaintiff's Eighth Amendment medical indifference claim against Dr. Mandalaywala with

10

regard to his failure to receive physical or speech therapy is based upon Dr. Mandalaywala's alleged receipt of documents from Albany Medical indicating that Plaintiff needed physical and speech therapy, and the Defendant's failure to order the therapy upon Plaintiff's return to Upstate. (Dkt. No. 15 at 9.)

In seeking dismissal of the medical indifference claim, Dr. Mandalaywala argues that "Plaintiff's physical and occupational therapy was documented as having been discontinued on October 20, 2016, prior to his return to Upstate C.F." (Dkt. No. 24-1 at 9.) The Defendant further argues that "Plaintiff identifies no record that prescribed speech therapy upon his return to Upstate C.F." *Id.* Dr. Mandalaywala's argument with regard to physical therapy finds support in the October 20, 2016, edit on the Discharge Summary annexed as an exhibit to Plaintiff's second amended complaint. (Dkt. No. 15-1 at 20.) The edit to the Discharge Summary by NP Rasoully notes that physical therapy and occupational therapy were discontinued on October 20, 2016. *Id.* The Upstate progress note of October 21, 2016, suggesting that Plaintiff was only going to continue to have speech therapy upon his return to Upstate, lends support to Dr. Mandalaywala's argument with regard to physical and occupational therapy. *Id.* at 24.

In his opposition to Defendants' motion, Plaintiff contends that the edit merely referred to discontinuance of physical and occupational therapy at the hospital because Plaintiff was being discharged and did not constitute a revision to the Discharge Summary directing that he receive physical and occupational therapy. (Dkt. No. 33 at 3.) Given the requirement on a Rule 12(b)(6) motion that the court accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor, *Hernandez*, 18 F.3d at 136, the Court finds solely for purposes of Defendants' motion that however unlikely, Plaintiff's interpretation of the edit

11

with regard to physical and occupational therapy is not entirely implausible.

Moreover, contrary to Defendant's assertion that Plaintiff has failed to identify any document prescribing speech therapy upon his return to Upstate, the Discharge Summary specifically states that "[t]he patient is to continue to work with speech and swallowing pathologist given his aphalga . . . ." *Id.* at 6. Unlike the statement regarding physical and occupational therapy, there is no indication that the instruction with regard to Plaintiff continuing to work with a speech pathologist was ever edited.

2.    Assignment on the Flats

Contrary to the October 21, 2016, Upstate progress notes regarding Plaintiff's ability to ambulate following his stroke, Plaintiff claims that his whole right side was debilitated and he walked with extreme difficulty and pain. (Dkt. No. 33 at 4.) Plaintiff also claims that it was Dr. Mandalaywala who discharged him to his cell on October 23, 2016, and that he was not placed in the flats until January 10, 2017, despite his request to Dr. Mandalaywala at the time he left the infirmary and continued requests to be placed in the flats. *Id.* at 4-5. The fact that Plaintiff was ultimately placed in the flats allows the Court to infer for purposes of this motion that Plaintiff's physical condition warranted the placement.

The progress notes indicate that Dr. Mandalaywala was to be the one responsible for discharging Plaintiff from the infirmary, thus offering some support to Plaintiff's claim that the doctor was involved in decisions regarding his care. (Dkt. No. 15-1 at 24.) In addition, as noted above, Plaintiff contends that Dr. Mandalaywala was the primary and supervising physician at Upstate. (Dkt. No. 33 at 4.)

3.   Deliberate Indifference

The Court, while recognizing the high standard that must ultimately be met to support a deliberate indifference claim, declines to recommend dismissal of Plaintiff's Eighth Amendment medical indifference claim at the motion to dismiss stage before Plaintiff has had an opportunity to conduct discovery on the issue of whether Dr. Mandalaywala acted with deliberate indifference in failing to direct that he be provided with physical or speech therapy and be placed in the flats.  *See Chance,* 143 F.3d at 703-04) (reversing district court's dismissal of medical indifference claim at the 12(b)(6) stage because "[w]hether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends in the facts of the case . . . .  It may be that [plaintiff] has no proof whatsoever of this improper motive, and that lack of proof may become apparent at summary judgment.  But even if we think it highly unlikely that [plaintiff] will be able to prove his allegations, that fact does not justify dismissal for failure to state a claim . . . .") (citations and internal quotation marks omitted); *Jones v. Westchester Cnty. Dept. of Corrs. Medical Dept.*, 557 F. Supp. 2d 408, 416 (S.D.N.Y. 2008) ("Whatever the ultimate merits of Plaintiff's claims, Defendants have jumped the gun by filing a pre-answer motion to dismiss.  Many of the material questions in this case, such as 'What care is reasonable in these circumstances,' . . . are not ripe for adjudication on the basis of the complaint and its appended materials.  It may become clear, at summary judgment or at some later stage in the litigation, that these claims are not adequately supported.  But at the 12(b)(6) stage, we must accept the plaintiff's allegations as true . . . .") (citation and internal quotation marks omitted).

Therefore, the Court recommends that Dr. Mandalaywala's Rule 12(b)(6) motion be

13

denied, and Plaintiff be given an opportunity to engage in reasonable discovery.

## V.   PLAINTIFF'S FAILURE TO EXHAUST EIGHTH AMENDMENT EXCESSIVE FORCE CLAIM AGAINST DEFENDANT BENNETT

### A.   Legal Standard for Exhaustion of § 1983 Prisoner Claims

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, __ U.S. ___, 136 S. Ct. 1850, 1854-55 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

The PLRA requires "proper exhaustion," which means using all steps required by the administrative review process applicable to the institution in which an inmate is confined and doing so properly. *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly") (internal quotations omitted). In New York State prisons, DOCCS has a well-established three-step IGP. N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 7, § 701.5.

First, an inmate must file a complaint with the facility IGP clerk within twenty-one days of the alleged occurrence. *Id*. § 701.5(a)(1). A representative of the facility's Inmate Grievance

14

Resolution Committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue.  *Id*. § 701.5(b)(1).  If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, *id*. § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing.  *Id*. § 701.5(b)(3).

Second, a grievant may appeal the IGRC's decision to the facility superintendent within seven calendar days of receipt of the IGRC's written decision.  *Id*. § 701.5(c)(1).  If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal.  *Id*. § 701.5(c)(3)(ii).  Grievances regarding DOCCS-wide policy issues are forwarded directly to the Central Office Review Committee ("CORC") for a decision under the process applicable to the third step.  *Id*. § 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision.  *Id*. § 701.5(d)(1)(i).  CORC is to render a written decision within thirty calendar days of receipt of the appeal.  *Id*. § 701.5(d)(3)(ii).

There are special procedures that may be used when, as in this case, the relevant grievances are code 49 involving staff misconduct.  *Id*. § 701.8.  A grievance alleging staff misconduct, once it is given a number and recorded, must be sent directly to the superintendent, and the superintendent must issue a decision within twenty-five days.  *Id*. § 701.8(f).   If the grievant wishes to appeal a decision by the Superintendent to CORC, he must file a notice of decision to appeal with the inmate grievance clerk at the bottom of the Superintendent's decision within seven days of receipt of the decision.  *Id*. § 701.8(h).  CORC is required to render a

written decision within thirty calendar days of receipt of the appeal. *Id.* § 701.8(i) (incorporating § 701.5).

As set forth above, at each step of the IGP, a decision must be rendered within a specified time period. "Where the IGRC and/or superintendent do not timely respond, an inmate must appeal 'to the next step,'" assuming there is another step in the IGP. *Eleby v. Smith*, No. 9:15-CV-0281 (TJM/DEP), 2017 WL 986123, at *4 (N.D.N.Y. Jan. 9, 2017) (quoting 7 N.Y.C.R.R. § 701.6(g)(2)); *see also Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance . . . can   and must   be appealed to the next level . . . to complete the grievance process.").

Generally, if a plaintiff fails to follow each of the required steps of the IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits.") (internal quotations and citations omitted)).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]" (quotations and citations omitted). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of

16

use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotations and internal citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id*. at 1859-60. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end   with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1860.

In *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), the Second Circuit noted that, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" The illustrations of unavailability in *Ross* nonetheless guide the Court's inquiry. *See Mena v. City of New York*, No. 13-CV-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Because non-exhaustion is an affirmative defense, defendants bear the burden of showing that a prisoner has failed to satisfy the exhaustion requirements. *See Jones,* 549 U.S. at 216; *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). Plaintiff must then establish that the IGP grievance procedure was unavailable to him under *Ross*. *Jones*, 549 U.S. at 216.

### B.      Plaintiff's Failure to Exhaust

In *Williams*, 829 F.3d at 122, the Second Circuit instructed that while "[f]ailure to exhaust administrative remedies is an affirmative defense," a district court "may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint

that the plaintiff did not satisfy the PLRA exhaustion requirement."  Defendants correctly argue

that the allegation in Plaintiff's second amended complaint that on December 27, 2016, after his

return to Upstate, he submitted a grievance for the physical abuse he received at Great Meadow

and never received a response, makes clear that Plaintiff did not exhaust his administrative

remedies under the PLRA with regard to the excessive force claim against Bennett.  (Dkt. Nos.

15 at 9; 24-1 at 14.)

       In his sworn opposition to Defendants' motion to dismiss, however, Plaintiff elaborated

on his allegedly unsuccessful efforts with regard to filing and following up on the grievance

involving excessive force at Great Meadow.  According to Plaintiff, on December 27, 2016, after

his return to Upstate, it took him hours to write the grievance because he was in severe pain, and

he was unable to make a copy of the grievance because he was in keeplock.  (Dkt. No. 33 at 8.)

Plaintiff claims to have filed the grievance at Upstate and to have been told at Upstate that the

grievance had been sent to Great Meadow.  *Id*.  When Plaintiff inquired as to the progress of the

grievance after a few weeks, he was told by the Upstate IGRC that it was out of their hands and

that it would be futile to send another grievance because at that point more than twenty-one days

had passed since the occurrence.  *Id*.  Plaintiff claims to have then submitted a letter to the

superintendent at Upstate regarding the grievance and to have received no response.  *Id*.  Plaintiff

also claims to have sent a letter regarding the grievance to the superintendent at Great Meadow

with no response.  *Id*. at 9.  On September 11, 2018, Plaintiff submitted a FOIL request for a

copy of a grievance dated on or around December 27, 2016, and was informed in response that

the record he had requested did not exist at Great Meadow.  *Id*. at 21.  Plaintiff claims that when

you are grieving issues at a facility where you are not residing, there is no way to appeal to

CORC without a prior decision on the grievance.  *Id.*

The Court has considered Plaintiff's sworn opposition to Defendants' motion as effectively amending the allegations in his second amended complaint to allege unavailability of the IGP.  *See Robles*, 2008 WL 4693153, at *6 and n.41.  In *Williams*, the Second Circuit reversed the district court's dismissal of the plaintiff's complaint for failure to state a claim on the basis of exhaustion when the plaintiff alleged his grievance was never filed.  829 F.3d at 121. Because, as in this case, the defendant's motion was one to dismiss for failure to state a claim, the Second Circuit accepted "as true [plaintiff's] allegation that the corrections officer never filed his grievance" and rejected defendant's argument that the plaintiff still could have appealed through to CORC under the IGP on the grounds that the appeal process was prohibitively opaque in those cases where a grievance had not been filed.  *Id.  See also Grayson v. C.O. Courtney*, No. 9:16-CV-1118 (GLS/ATB), 2017 WL 4083146, at *3-4 (N.D.N.Y. Aug. 22, 2017) (recommending denial of motion to dismiss for failure to state a claim where the allegations in the complaint could be construed to state that the grievance was never filed, thereby making it unclear from the face of the complaint whether failure to exhaust could be excused as unavailable); *Shaw v. Ortiz*, No. 15-CV-8964 (KMK), 2016 WL 7410722, at * 5 (S.D.N.Y. Dec. 21, 2016) (denial of motion to dismiss for failure to exhaust where accepting the allegations of the complaint as true, the court could not determine from the face of the complaint whether administrative remedies were actually available).

In this case, in light of the allegations in Plaintiff's complaint, as amended by his opposition to Defendants' motion, which have made it unclear from the face of the pleading whether Plaintiff's failure to exhaust may be excused on availability grounds, the Court

19

recommends denial of Defendant Bennett's motion to dismiss for failure to exhaust. The denial should be without prejudice to Bennett filing a properly supported motion for summary judgment regarding the exhaustion issue.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' Rule 12(b)(6) motion to dismiss Plaintiff's second amended complaint (Dkt. No. 24) be **DENIED**; and it is hereby

**ORDERED** that the Clerk's Office provide Plaintiff with copies of all unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[5] Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: December 6, 2018
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[5] If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

2017 WL 986123

2017 WL 986123
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Terrell K. ELEBY, Plaintiff,
v.
G. SMITH and N. Vevone, Defendants.

Civil Action No. 9:15-CV-0281 (TJM/DEP)
|
Signed January 9, 2016
|
Filed 01/09/2017

**Attorneys and Law Firms**

TERRELL K. ELEBY, 86-A-0908, Sing Sing Correctional Facility, 354 Hunter Street, Ossining, NY 10562, Pro Se.

FOR DEFENDANTS: ERIC T. SCHNEIDERMAN, New York State Attorney General, OF COUNSEL: CHRISTOPHER J. HUMMEL, ESQ., Assistant Attorney General, The Capitol, Albany, NY 12224.

REPORT AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

**\*1** This is a civil rights action brought by *pro se* plaintiff Terrell Eleby against three individuals employed by the New York State Department of Corrections and Community Supervision ("DOCCS"), one of whom has since been dismissed from the action, pursuant to 42 U.S.C. § 1983. In his complaint, plaintiff alleges that two of the defendants assaulted him in violation of his Eighth Amendment rights, and the third defendant violated his Fourteenth Amendment rights by issuing an allegedly false misbehavior report against him and confining him in the special housing unit ("SHU") at the prison facility in which he was housed.

Currently pending before the court is a motion brought by the remaining two defendants seeking the entry of summary judgment in their favor based upon plaintiff's alleged failure to exhaust available administrative remedies before filing suit. For the reasons set forth below, I recommend that the defendants' motion be granted.

I. BACKGROUND [1]
Plaintiff is a prison inmate currently held in the custody of the DOCCS. *See, e.g.,* Dkt. No. 29-2 at 13. Although plaintiff is now confined elsewhere, at the times relevant to this action he was housed in the Auburn Correctional Facility ("Auburn") located in Auburn, New York. *Id.* at 18.

In his complaint, plaintiff alleges that on January 14, 2015, he was waiting in one of Auburn's hospital dormitory rooms to be escorted to an outside facility for a medical examination. Dkt. No. 1 at 4; Dkt. No. 29-2 at 54. At approximately 10:00AM, defendants Smith and Vevone, both of whom are corrections officers, arrived at plaintiff's room to escort him on the medical trip. Dkt. No. 1 at 4. While plaintiff was attempting to remove his clothes for a mandatory strip search, defendant Smith "violently and physically attacked [him]." *Id.*; *see also* Dkt. No. 29-2 at 58. According to plaintiff, both defendants Smith and Vevone "jumped on [his] back," and defendant Smith punched him repeatedly in the eye, head, neck, back, and ribs. Dkt. No. 29-2 at 58, 62-63. After approximately five minutes Sergeant Cudla, who is not a named defendant in the action, arrived at plaintiff's dorm, physically intervened, and ordered defendants Smith and Vevone to cease the assault and leave the room. Dkt. No. 1 at 4-5; Dkt. No. 29-2 at 58-59, 64. As a result of the alleged assault, plaintiff suffered various injuries, including a bloody and swollen eye, swelling and redness to his neck, and sore ribs. Dkt. No. 1 at 5; Dkt. No. 29-2 at 62-63, 67.

Following the use-of-force incident, defendants Smith and Vevone issued plaintiff a misbehavior report accusing him of violating six prison rules. Dkt. No. 22 at 9; Dkt. No. 29-2 at 72. Following a superintendent's hearing to address the charges, plaintiff was found guilty on four of the six counts. Dkt. No. 22 at 13; Dkt. No. 29-2 at 72. As a result of that finding, plaintiff was sentenced to serve thirty days of disciplinary SHU confinement, with a corresponding loss of commissary, package, and telephone privileges. Dkt. No. 22 at 13; Dkt. No. 29-2 at 73-72.

II. PROCEDURAL HISTORY

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

Case 9:17-cv-01303-BKS-TWD    Document 38    Filed 12/06/18    Page 22 of 62

2017 WL 986123

**\*2** Plaintiff commenced this action on or about March 12, 2015, with the filing of a complaint and accompanied by an application to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1, 2. On May 12, 2015, Senior District Judge Thomas J. McAvoy issued a decision and order granting plaintiff's IFP application and accepting his complaint for filing, with the exception of one cause of action.[2] Dkt. No. 11. In his third cause of action, plaintiff asserted a Fourteenth Amendment claim against defendant Lieutenant Quinn based on the allegation that defendant Quinn "conspire[d] and aided ... in writing a false [misbehavior] report after ascertaining the facts [sic] that [defendants Smith and Vevone] were in the wrong." Dkt. No. 1 at 6. Judge McAvoy dismissed that cause of action for failure to state a cognizable claim pursuant to 28 U.S.C. §§ 1915(e), 1915A. Dkt. No. 11 at 9-12.

Following the close of discovery, defendants Smith and Vevone filed the currently pending motion for summary judgment seeking dismissal of plaintiff's complaint, arguing that plaintiff failed to fully exhaust available administrative remedies before filing this action. Dkt. No. 29-5. Plaintiff has filed a response in opposition to defendants' motion, which is now fully briefed, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

## III. DISCUSSION

### A. Legal Standard Governing Summary Judgment
Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. Plaintiff's Exhaustion of Administrative Remedies
**\*3** In their motion, defendants contend that plaintiff's complaint is subject to dismissal because plaintiff has failed to exhaust available administrative remedies as required under the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), prior to commencing this action. *See generally* Dkt. No. 29-5 at 2.

### 1. Legal Principles Governing Exhaustion Under the PLRA

The PLRA, which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1997e(a)'s exhaustion provision is "mandatory" and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

Case 9:17-cv-01303-BKS-TWD    Document 38    Filed 12/06/18    Page 23 of 62

2017 WL 986123

S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *Wilson v. McKenna*, ──── Fed.Appx. ────, No. 15-3496, 2016 WL 5791558, at *1 (2d Cir. Oct. 4, 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." [3] *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).

New York affords state prison inmates the opportunity to seek redress of complaints regarding prison conditions through a grievance procedure that is designated as the Inmate Grievance Program ("IGP"). *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1, 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC") [4] have up to sixteen days after the grievance is filed to informally resolve the issue. *Id.* at § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. *Id.* at § 701.5(b)(2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal. [5] *Id.* at § 701.5(c)(3)(i), (ii).

**\*4** The third and final step of the IGP involves an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be taken within seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to

render a written decision within thirty days of receipt of an appeal. *Id.* at § 701.5(d)(2)(i).

It is worth noting that, as in this case, where an inmate complains of harassment or other misconduct by corrections officers or prison employees, the IGP provides for an expedited review process. 7 N.Y.C.R.R. § 701.8. In particular, the IGP requires inmates "who wish[ ] to file a grievance complaint that alleges employee harassment [to] follow the procedures set forth in [7 N.Y.C.R.R §] 701.5(a)[.]" *Id.* at § 701.8(a). As was noted above, section 701.5(a)(1) provides that, *inter alia*, the inmate shall submit his grievance to the clerk within twenty-one days of the incident of which he complains. *Id.* at § 701.5(a)(1). On the same day the clerk receives a grievance complaining of employee harassment, he must forward it "to the superintendent by the close of business." *Id.* at § 701.8(b).

As can be seen, at each step of the IGP process, a decision must be rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the IGRC and/ or superintendent do not timely respond, an inmate must appeal "to the next step." *Id.* at § 701.6(g)(2); *Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) (Suddaby, J.) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance ... can— and must—be appealed to the next level ... to complete the grievance process."). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

Case 9:17-cv-01303-BKS-TWD    Document 38    Filed 12/06/18    Page 24 of 62

2017 WL 986123

exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA. [6] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

2. Analysis

**\*5** The record now before the court firmly establishes that plaintiff did not exhaust the available administrative remedies in accordance with the PLRA before commencing this action. According to plaintiff, following the alleged assault, he submitted a (1) grievance, [7] (2) letter to the superintendent at Auburn, (3) memorandum to the IGP supervisor at Auburn, and (4) letter to the New York State Inspector General ("IG") complaining of the alleged assault by defendants Smith and Vevone. [8] Dkt. No. 29-2 at 25-26, 39-40, 46-47, 50, 94-99, 104. Plaintiff did not receive any written response to any of his correspondence. Dkt. No. 29-2 at 40-42, 48-49, 51-53. He claims, however, that an officer stationed at Auburn, Sergeant Cudla, conducted an in-person interview of him on January 22, 2015, in connection with the grievance allegedly filed, and the IG's office conducted an investigation that included an interview of plaintiff in or about April 2015. *Id.* at 40-42, 48-49, 51-53. He also contends that he spoke directly to Deputy Robisson, the Deputy of Superintendent for Security at Auburn, regarding the assault. *Id.* at 31-32, 47-48, 100.

Notwithstanding the fact that he did not receive a written response to any of his correspondence regarding the alleged assault, plaintiff admittedly neglected to appeal the lack of a response to the next level of the IGP. *Id.* at 48-51. Because the IGP has been interpreted by courts in this circuit as requiring inmates to appeal to the next level when they do not receive a timely response to their grievance, plaintiff should have appealed to the superintendent and/or the CORC when he failed to receive a written response to the grievance he allegedly filed. *See* 7 N.Y.C.R.R. § 701.6(g)(2) ("[M]atters not decided within the time limits may be appealed to the next step."); *Dabney v. Pegano*, 604 Fed.Appx. 1, 4-5 (2d Cir. 2015) (citing section 701.6(g) and concluding that, based on that provision, the plaintiff had "an unimpeded path to the CORC, notwithstanding his claims that the Great Meadow grievance clerk failed to process his complaint and that the Clinton superintendent ignored his appeal"); *Hyliger v. Gebler*, 624 Fed.Appx. 780, 782 (2d Cir. 2015) ("Under the regulations ..., if at any step of the grievance process[ ] an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to appeal to the next step. Thus, when [the plaintiff] did not receive a written response from the IGRC, appeal to the superintendent was still an available administrative remedy." (quotation marks, alteration, citation, and footnote omitted)). The record in this case shows, without contradiction, that while plaintiff appealed other grievance denials to the CORC, he did not do so in connection with defendants' alleged assault. Dkt. No. 29-3 at 4. This default constitutes a failure to exhaust available administrative remedies for purposes of the PLRA.

Liberally construing plaintiff's response to defendants' pending motion, he contends that he fully exhausted administrative remedies before commencing this action because his grievance involved allegations of employee harassment, and, consequently, by sending his letter directly to the superintendent he satisfied the requirements of the IGP. Dkt. No. 31 at 5. The IGP, however, clearly mandates that even those grievances complaining of employee harassment must be filed with the IGP clerk, who then must forward the grievance to the superintendent on the day of receipt. 7 N.Y.C.R.R. § 701.8(a). Writing and sending a letter directly to a superintendent does not satisfy the IGP. *See Dabney*, 604 Fed.Appx. at 3 ("The IGP also has an expedited

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

Case 9:17-cv-01303-BKS-TWD   Document 38   Filed 12/06/18   Page 25 of 62

2017 WL 986123

process for harassment grievances, which pertains to employee conduct meant to annoy, intimidate, or harm an inmate. These grievances go directly to a superintendent." (quotation marks, citations omitted)); *see also Lopez v. Bushey*, No. 11-CV-0418, 2014 WL 2807532, at \*9 (N.D.N.Y. Apr. 7, 2014) (Dancks, M.J.) ("If the grievance involves a claim of misconduct by staff, harassment or discrimination, it receives a code of 49.... [T]he grievance is handled expeditiously by passing through the IGRC and going directly to the superintendent of the facility.").

**\*6** Plaintiff next argues that he appealed the disciplinary hearing determination related to the misbehavior report he was issued, following the alleged assault by defendants Smith and Vevone, on January 14, 2015. Dkt. No. 31 at 3. Appealing a disciplinary hearing determination, however, is no substitute for filing and pursuing to completion a grievance through the IGP. [9] *See, e.g., McCoy v. Goord*, 255 F. Supp. 2d 233, 256 (S.D.N.Y. 2003).

Plaintiff also "asserts ... that the defendants hinder[ed] [his] complaint from reaching the CORC and from being properly filed with the IGRC." Dkt. No. 31 at 5. While I am mindful of my obligation to draw all inferences in favor of the non-moving party on summary judgment, *Terry*, 336 F.3d at 137, this conclusory allegation is not supported by any record evidence. Indeed, plaintiff sets forth this contention in an unsworn memorandum of law, which is decidedly not evidence. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 142 (2d Cir. 2003) ("In support of the assertion that the police had received complaints of drug activity in the area, the district court cited, not to admissible evidence, but to the defendants' memorandum of law, which is not evidence at all."). In any event, even assuming plaintiff's contention constitutes competent evidence, "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. N.Y.C. Dep't of Corrs.*, 84 F.3d 614, 619 (2d Cir. 1996). At his deposition in this matter, plaintiff unequivocally testified that he did not file an appeal of his grievance to the CORC. Dkt. No. 29-2 at 49-51. He now attempts to create a dispute of fact by arguing that defendants thwarted his appeal from reaching the CORC. Dkt. No. 31 at 5. This he cannot do. *Hayes*, 84 F.3d at 619.

Finally, to the extent plaintiff contends that his letter to the IG and any subsequent investigation constitutes exhaustion under the PLRA, plaintiff is incorrect. *See, e.g., Goodson v. Silver*, No. 09-CV-0494, 2012 WL 4449937, at \*9 (N.D.N.Y. Sept. 25, 2012) (Suddaby, C.J.) ("[A]n IG's investigation of a matter and conclusion that it is unsubstantiated does not satisfy the exhaustion requirement[.]" (citing cases)).

In summary, because plaintiff admittedly failed to pursue a grievance filed under the IGP to completion by filing an appeal to the CORC, and because he has failed to set forth any evidence that the IGP was rendered unavailable to him, I recommend that defendants' motion be granted.

## IV. SUMMARY AND RECOMMENDATION

Plaintiff's remaining cause of action alleges that defendants Smith and Vevone applied excessive force against him on January 14, 2015. Although plaintiff alleges that he filed various written documents—including a grievance in accordance with the IGP—complaining of defendants' use of force, he admits that he did not pursue the matter through the IGP by seeking review of his grievance by the CORC, as required under the available grievance program. Accordingly, it is respectfully

**\*7** RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 29) be GRANTED and that plaintiff's complaint in this matter be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [10] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

The clerk of the court is respectfully directed to serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

## All Citations

Not Reported in Fed. Supp., 2017 WL 986123

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

2017 WL 986123

Case 9:17-cv-01303-BKS-TWD   Document 38   Filed 12/06/18   Page 26 of 62

Footnotes

1   In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

2   Plaintiff's first and second IFP applications were denied as incomplete. Dkt. Nos. 4, 7. Following those denials, plaintiff filed a third IFP motion, on or about April 2, 2015, which was then granted by Judge McAvoy. Dkt. Nos. 9, 11.

3   Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

4   The IGRC is comprised of "two voting inmates, two voting staff members, and a non-voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

5   Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of an appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

6   According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

7   Aside from plaintiff's testimony at his deposition, there is no record evidence to support his allegation that he filed a grievance in accordance with the IGP. *See, e.g.,* Dkt. No. 29-3 at 4; Dkt. No. 29-4 at 2.

8   In or about 2014 the DOCCS Office of Special Investigations assumed the role previously played by the IG, including investigating complaints regarding prison conditions. *See* DOCCS Directive No. 0700, available at http://www.doccs.ny.gov/Directives/0700.pdf.

9   In any event, plaintiff's appeal of the disciplinary hearing determination does not complain of excessive force used by defendants Smith and Vevone. Dkt. No. 22 at 22-23. Instead, plaintiff argued on appeal that the hearing determination was based on insufficient evidence. *Id.* Accordingly, even assuming the appeal from the disciplinary hearing could act as a substitute for filing and pursuing a grievance through the IGP, plaintiff's appeal did not place prison officials on notice of his complaints of excessive force because he did not raise them in his appeal. *Id.*

10  If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 4083146
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Don-Lee GRAYSON, Plaintiff,
v.
C.O. COURTNEY and C.O. Jaquish, Defendants.

9:16-CV-1118 (GLS/ATB)
|
Signed 08/22/2017

**Attorneys and Law Firms**

DON-LEE GRAYSON, Plaintiff, pro se.

RACHEL MAMAN KISH, Asst. Attorney General for
Defendants.

**REPORT-RECOMMENDATION**

Hon. Andrew T. Baxter, U.S. Magistrate Judge

**\*1** This matter has been referred to me for Report
and Recommendation by the Honorable Gary L. Sharpe,
Senior United States District Court Judge. In this
amended civil rights complaint, plaintiff claims that he
has been subjected to unwanted second-hand tobacco
smoke from October 6, 2015 until the present while
he has been incarcerated in the Clinton Correctional
Facility Annex ("Clinton Annex"). (Amended Compl.
("AC") (Dkt. No. 27). Plaintiff claims that defendants
Courtney and Jaquish, both corrections officers ("CO")
at Clinton Annex, condoned violation of, and failed to
enforce, the facility's no smoking policy, causing plaintiff
to suffer serious allergic reactions. (AC ¶¶ III(7)-III(9)).
Plaintiff asserts a violation of his Eighth Amendment
right to be free from unconstitutional conditions of
confinement. Plaintiff seeks declaratory, injunctive, and
monetary relief. (AC ¶ VI).

Presently before the court is the defendants' motion to
dismiss for failure to state a claim pursuant to Fed.
R. Civ. P. 12(b)(6). (Dkt. No. 35). Although plaintiff
requested additional time for responding to defendants'
motion, he has failed to do so. (Dkt. Nos. 37, 38). For
the following reasons, this court will recommend granting
the defendants' motion in part, and denying the motion in
part.

**I. Motion to Dismiss**

To survive dismissal for failure to state a claim, the
complaint must contain sufficient factual matter, accepted
as true, to state a claim that is "plausible on its face."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173
L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).
"[T]hreadbare recitals of the elements of a cause of action,
supported by mere conclusory statements," do not suffice.
*Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555, 127 S.Ct. 1955).
Plaintiff's factual allegations must also be sufficient to give
the defendant " 'fair notice of what the ... claim is and the
grounds upon which it rests.' " *Bell Atl. Corp.*, 550 U.S. at
555, 127 S.Ct. 1955 (citation omitted).

When ruling on a motion to dismiss, the court must
accept as true all of the factual allegations contained
in the complaint and draw all reasonable inferences in
the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89,
94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citations
omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel.
Co.*, 62 F.3d 69, 71 (2d Cir. 1995). The court must heed
its particular obligation to treat pro se pleadings with
liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir.
2005); *Tapia Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999)
(*per curiam*).

In deciding a motion to dismiss, the court may review
documents integral to the complaint upon which the
plaintiff relied in drafting his pleadings, as well as any
documents attached to the complaint as exhibits and any
statements or documents incorporated into the complaint
by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir.
2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel.
Co.*, 62 F.3d at 72 (the court may take into consideration
documents referenced in or attached to the complaint
in deciding a motion to dismiss, without converting
the proceeding to one for summary judgment). Finally,
the court may consider matters of which judicial notice
may be taken, such as public filings and administrative
decisions. *See Kavowras v. New York Times, Co.*, 328 F.3d
50, 57 (2d Cir. 2003) (citing *inter alia County Vanlines,
Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148,
154 (S.D.N.Y. 2002) (taking judicial notice of NLRB
decisions)). *See also Combier Kapel v. Biegelson*, 242
Fed.Appx. 714, 715 (2d Cir. 2007) (taking judicial notice

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

of the Impartial Hearing Officer's decision as well as certain other documents in the administrative record of an IDEA case); *In re Howard's Exp., Inc.*, 151 Fed.Appx. 46, 48 (2d Cir. 2005) (taking judicial notice of Bankruptcy Court docket); *Caro v. Fidelity Brokerage Services, LLC*, No. 3:12-CV-1066, 2013 WL 3299708, at *6 (D. Conn. July 26, 2013) (taking judicial notice of record in prior litigation between the same parties).

## II. Official Capacity Claims/Eleventh Amendment

### A. Legal Standards

**\*2** The state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995) (citing *Will v. Michigan Department of Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. *Id.* at 815 n.3. An action against state officers in their official capacities is tantamount to an action against the state. *Yorktown Medical Laboratory, Inc. v. Perales*, 948 F.2d 84, 87 & n.1 (2d Cir. 1991) (citations omitted). Money damages may not be recovered from state officers sued in their official capacities. *JTE Enterprises, Inc.*, 2 F.Supp.3d at 340 (citing *Will*, 491 U.S. at 71, 109 S.Ct. 2304). Prospective injunctive relief is available against individuals in their official capacities in order to correct an ongoing violation of federal law. *Id.* (citing inter alia *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)).

### B. Application

Defendants argue that plaintiff's amended complaint must be dismissed as to the defendant corrections officers "in their official capacities." To the extent that plaintiff is seeking damages, the defendants are correct. Plaintiff may not recover damages against the officers in their "official capacities." In an order granting in part plaintiff's motion to file an amended complaint (Dkt. No. 20), Judge Sharpe denied plaintiff's request to bring an action for damages against the officers in their official capacities. (Dkt. No. 25 at 4). Plaintiff's subsequently-filed amended complaint included the words: "official capacity" in the caption and in the description of the defendants. [1] (AC at p.1 & ¶ 6). However, to the extent that the plaintiff is seeking "prospective injunctive relief," he may continue to name the defendants in their official capacities. Thus, the court recommends dismissal of the official capacity claims only

insofar as the amended complaint may be interpreted as requesting damages against defendant Courtney and Jaquish in their official capacities.

## III. Exhaustion of Administrative Remedies

### A. Legal Standards

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g., Key v. Toussaint*, 660 F.Supp.2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19, 127 S.Ct. 910 (citing *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103, 126 S.Ct. 2378.

**\*3** The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level

2017 WL 4083146

may be appealed to the Central Office Review Committee ("CORC"). *Id.* § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id.* § 701.8. Complaints of harassment are handled by an expedited procedure which provides that such grievances are forwarded directly to the superintendent of the facility, after which the inmate must appeal any negative determination to the CORC. *Id.* §§ 701.8(h) & (i), 701.5.

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom,* 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York,* 380 F.3d 680, 686 (2d Cir. 2004)). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

The Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake,* ——U.S. ——, 136 S.Ct. 1850, 1857, 195 L.Ed.2d 117 (June 6, 2016). " '[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.' " *Riles v. Buchanan,* 656 Fed.Appx. 577, 580 (2d Cir. 2016) (quoting *Ross,* —— U.S. ——, 136 S.Ct. at 1857). Although *Ross* has eliminated the "special circumstances" exception, the other two factors in *Hemphill*—availability and estoppel—are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross,* —— U.S. ——, 136 S.Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id. See also Riles,* 2016 WL 4572321 at *2, 656 Fed.Appx. 577. Defendants bear the burden of proving the affirmative defense of failure to exhaust. *Williams v. Priatno,* 829 F.3d 118, 122 (2d Cir. 2016).

**B. Application**

Defendants argue that plaintiff admits that he has failed to exhaust his administrative remedies on the face of the amended complaint. (Def.s' Mem. of Law at 3-6). In the amended complaint, plaintiff states that he

> used the Prisoner Grievance Procedure available at [Clinton Annex] to try to resolve the problem he now claims. On May 11, 2016, Plaintiff presented the facts relating to his complaint. Until the present day, Plaintiff has not received any responses. No denial of receiving the grievances, nothing. No appeal has been taken due to no reply from the Grievance Committee or Superintendent M. Kirkpatrick.

(AC ¶ IV(10)). Defendants are correct in stating that it is clear that plaintiff did not exhaust his administrative remedies. However, the inquiry does not end here. While it is true that if a grievance is actually filed, plaintiff is not excused from appealing if he does not receive a response to the grievance within the time set forth in the regulations. *See* 7 N.Y.C.R.R. § 701.6(g)(2) (an inmate may appeal a grievance to the next level if he does not receive a timely response).

However, in *Williams,* the Second Circuit reversed the district court's dismissal of the plaintiff's complaint for failure to state a claim on the basis of failure to exhaust when the plaintiff alleged that his grievance was never filed. The district court reasoned that even if Williams's grievance had never been filed, he still could have appealed it to the next level because "the regulations allow an appeal in the absence of a response." 829 F.3d at 121. The Second Circuit found that, even though the administrative remedy was "on the books," it gave no guidance "to an inmate whose grievance was never filed." *Id.* at 124. Because the defendant's motion was one to dismiss for failure to state a claim, the court accepted "as true Williams's allegation that the corrections officer never filed his grievance." *Id.* The court held that the appeal process was "unavailable" because the procedure was "prohibitively opaque" so that "no inmate could actually make use of it." *Id.* at 126.

**\*4** In *Shaw v. Otiz*, the court found that plaintiff failed to complete the grievance process by failing to appeal to the CORC after the Superintendent "ignored" his letter, and plaintiff stated that the officers " 'must have been misplacing [his] mail.' " *Shaw v. Ortiz*, No. 15-CV-8964, 2016 WL 7410722 at *5 (S.D.N.Y. Dec. 21, 2016). Accepting the plaintiff's statements as true, the court denied defendants' motion to dismiss because the court could not determine from the face of the complaint whether the administrative remedies were actually "available." *Id.* In this case, plaintiff comment that there was "no denial of receiving the grievance, nothing" may mean that he filed the grievance, but received no response from the grievance committee or the Superintendent, in which case, his failure to exhaust would not be excused because he could have appealed to the next level, after failing to obtain a response to his grievance. The statement could also be interpreted as claiming that the grievance committee and/or the Superintendent never acknowledged receipt of the grievance, which could mean that the grievance was never filed, in which case, the time for appeal would never have started to run, and without more, the administrative remedies could be considered "unavailable" under *Williams*.

Because it is unclear from the face of plaintiff's amended complaint whether his failure to exhaust his administrative remedies may be excused, and it is the defendants' burden to establish the affirmative defense of failure to exhaust, this court will recommend denying the motion to dismiss. The denial should be without prejudice to defendants filing a properly supported motion for summary judgment regarding the exhaustion issue. *See also Daly v. New York City*, No. 16 Civ. 6521, 2107 WL 2364360, at *3 (S.D.N.Y. May 30, 2017) (citing *Franklin v. New York City*, No. 16 Civ. 5549, 2017 WL 776105, at *5 (S.D.N.Y. Feb. 10, 2017) (where plaintiff alleged he did not receive response to grievance and failed to file appeal, court could not determine from face of complaint whether plaintiff "has failed to exhaust available remedies"); *Shaw, supra, Rep't Rec. adopted* 2017 WL 2963502 (S.D.N.Y. Jul 11, 2017) (same)).

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. no. 35) be **GRANTED IN PART**, and that any claim for damages against the defendants in their official capacities be dismissed with prejudice, and it is

**RECOMMENDED**, that the defendants' motion to dismiss (Dkt. No. 35) be **DENIED IN ALL OTHER RESPECTS, WITHOUT PREJUDICE TO THE SUBMISSION OF A PROPERLY SUPPORTED MOTION FOR SUMMARY JUDGMENT**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**All Citations**

Slip Copy, 2017 WL 4083146

---

Footnotes

1    Plaintiff was given permission to amend his complaint without an accompanying proposed pleading because the only amendment he sought was to replace the "John Doe" defendants with the named defendants Courtney and Jaquish. (Dkt. No. 25 at 3-4).

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 3948100
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Jonathan Mena, Plaintiff,
v.
City of New York, et al., Defendants.

No. 13-cv-2430 (RJS)
|
Signed 07/19/2016

**Attorneys and Law Firms**

Jonathan Mena, Stormville, NY, pro se.

Omar Javed Siddiqi, Ryan Glenn Shaffer, New York City Law Department, New York, NY, for Defendants.

OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge

**\*1** Plaintiff Jonathan Mena, who is currently incarcerated and proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Correction Officer Benjamin Eason ("Defendant"), alleging violations of the Eighth Amendment. Now before the Court is Defendant's motion for summary judgment. For the reasons set forth below, the motion is granted.

I. BACKGROUND

A. Facts [1]

On September 9, 2012, while incarcerated at the Otis Bantum Correctional Center ("OBCC") on Rikers Island, Plaintiff was placed in an intake cell in the OBCC's receiving area, which he shared with two other individuals. (56.1 Stmt. ¶¶ 2–3.) Plaintiff alleges that the cell was extremely cold, vermin-infested, and too small to accommodate three men. (*See* Doc. No. 54-1 ("Compl.") 4, 8.) Plaintiff further alleges that these conditions, coupled with the constant noise made by the two other inmates, prevented him from sleeping for the entire 60-

hour period that he was held in the cell. (*See id.* at 4.) Consequently, he asked Defendant, who was on duty, to transfer him to a different cell. (56.1 Stmt. ¶¶ 7–8.) According to Plaintiff, Defendant responded that there was "nothing he could do" about the situation. (*Id.* ¶ 9; *see also* Doc. No. 54-2 ("Mena Dep.") 59:5-8.)

Plaintiff avers that he filed a grievance with the OBCC to complain about his experience in the cell. (*See* Compl. at 7.) The New York City Department of Correction ("DOC") has an administrative grievance procedure, known as the Inmate Grievance and Request Program ("IGRP"), for inmates housed at facilities such as the OBCC. The IGRP, which was available and in effect at all times relevant to this lawsuit, requires that inmates first file a complaint with the Inmate Grievance Resolution Committee ("IGRC") within ten days of the complained-of act. (56.1 Stmt. ¶¶ 11–12; *see also* Doc. No. 54-3 ("IGRP Directive") § IV(D)(1).) The IGRC then attempts to resolve the grievance informally within five days, and if the grievance is not informally resolved, then the inmate may request a formal hearing before the IGRC. (56.1 Stmt. ¶ 12; *see also* IGRP Directive §§ IV(G)-(H).) An inmate may appeal the IGRC's decision to the commanding officer, or her designee, and subsequent appeals may be taken to the Central Office Review Committee ("CORC"). (56.1 Stmt. ¶ 13; *see also* IGRP Directive §§ IV(I)-(J).) The CORC's decision is the final and binding decision of the DOC; if an inmate disputes the decision of the CORC, he may independently appeal to the Board of Correction. (IGRP Directive at 47.) Finally, if an inmate does not receive a timely disposition at any point throughout the grievance process, he has the option of either granting an extension of time to the relevant decisionmaker (i.e., the IGRC, the commanding officer, or the CORC) or appealing and proceeding to the next level of review. (56.1 Stmt. ¶ 14; *see also* IGRP Directive §§ IV(D)(9)(b), (10).)

**\*2** As Plaintiff himself acknowledges, after submitting the grievance and receiving no response, he neither granted the DOC an extension of time nor appealed. (*See* Compl. 7–8; Opp'n 6.) In his Complaint, Plaintiff admits that he is "still waiting" for a disposition of his grievance, but does not indicate any steps he has taken to appeal any decision before the IGRC. (*See* Compl. 7.) In response to a question on the Southern District of New York Prison Complaint form asking a plaintiff to "set forth any additional information that is relevant to the exhaustion of your administrative remedies," Plaintiff repeated a

number of his substantive allegations against the OBCC staff, but did not state any information relevant to the grievance process. (*Id.* at 5.) And in his opposition brief in connection with this motion, Plaintiff again notes that he filed "several grievances about the issues in question," but he does not indicate any specific steps he took to appeal to the IGRC or to pursue any other avenue of appellate review within the IGRP. (Opp'n 6.)

### B. Procedural History

On April 11, 2013, Plaintiff commenced this action by filing a complaint against the City of New York, Correction Officer Jaquon Pickwood ("Pickwood"), Correction Officer Sauda Abdul-Malik ("Abdul-Malik"), and Defendant (collectively, "Defendants"), pursuant to Section 1983, asserting violations of his constitutional rights under the Eighth and Fourteenth Amendments. (*See* Doc. No. 1.) On December 9, 2013, Defendants moved to dismiss the Complaint. (Doc. No. 18.) On September 17, 2014, the Court granted Defendants' motion to dismiss with respect to Plaintiff's claims against the City of New York, Pickwood, and Abdul-Malik, and Plaintiff's Fourteenth Amendment claims against Defendant for failure to state a claim upon which relief can be granted, but denied Defendants' motion to dismiss with respect to Plaintiff's Eighth Amendment claim against Officer Eason. (Doc. No. 29.) On September 11, 2015, following the completion of discovery, Defendant filed the instant motion for summary judgment, along with his brief and his 56.1 Statement, arguing that Plaintiff failed to exhaust administrative remedies, that his Eighth Amendment conditions of confinement claim failed on the merits, and that in any event, Defendant was entitled to qualified immunity. (Doc. Nos. 53–55, 57.) Defendant also filed a notice pursuant to Local Civil Rule 56.2 alerting Plaintiff of his obligation to submit a responsive statement and informing him of the consequences of not doing so. (Doc. No. 56.) In accordance with Local Rule 56.2, this notice included copies of Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1. (*Id.*) On October 14, 2015, Plaintiff filed a brief opposing summary judgment and submitted several exhibits (*see* Doc. No. 58), but he failed to submit a responsive 56.1 Statement. Defendant submitted his reply on October 22, 2015. (Doc. No. 59 ("Reply").)

### II. LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party " 'show[s]'– that is, point[s] out ... – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

**\*3** Typically, a "nonmoving party's failure to respond to a [Local Civil] Rule 56.1 statement permits the court

to conclude that the facts asserted in the statement are uncontested and admissible." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (citing *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998)). "This general rule applies equally" to cases involving a *pro se* nonmoving party who has been provided adequate notice of the consequences of failing to properly respond to a summary judgment motion. *Pierre-Antoine v. City of N.Y.*, No. 04-cv-6987 (GEL), 2006 WL 1292076, at *3 (S.D.N.Y. May 9, 2006); *see also Gilliam v. Trustees of Sheet Metal Workers' Nat'l Pension Fund*, No. 03-cv-7421 (KMK), 2005 WL 1026330, at *1 n.2 (S.D.N.Y. May 3, 2005). Even so, the Court "may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement," *Holtz, 258 F.3d at 73*, and the Court is obligated to construe *pro se* litigants' submissions liberally, *see McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

Here, Plaintiff failed to submit a responsive Rule 56.1 statement, even though Defendant, pursuant to Local Civil Rule 56.2, sent Plaintiff notice of his obligations under Local Civil Rule 56.1 and Federal Rule of Civil Procedure 56 and sent copies of both rules. (Doc. No. 56). In light of Plaintiff's *pro se* status, the Court has exercised its discretion to independently review the record, which reveals no controverted facts. *See Holtz*, 258 F.3d at 73. In fact, as discussed below, Plaintiff's own submissions confirm the material facts contained in Defendant's Rule 56.1 Statement.

### III. DISCUSSION

Defendant argues that summary judgment should be granted because Plaintiff has failed to comply with the administrative exhaustion requirement of the Prison Litigation Reform Act of 1995 (the "PLRA"). The Court agrees.

Under the PLRA, inmates bringing claims with respect to prison conditions under Section 1983 must exhaust the administrative remedies that are available at that prison before proceeding in federal court. 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is "mandatory," thus "foreclosing judicial discretion." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016); *see also Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (describing the "invigorated exhaustion provision" as "[a] centerpiece of the PLRA's

effort to reduce the quantity of prisoner suits" (citations and quotation marks omitted)). Accordingly, "the law is well-settled that the failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies." *Garvin v. Rivera*, No. 13-cv-7054 (RJS), 2015 WL 3999180, at *3 (S.D.N.Y. June 29, 2015); *accord Johnson v. N.Y.C. Dep't of Corr.*, No. 13-cv-6799 (CM), 2014 WL 2800753, at *6 (S.D.N.Y. June 16, 2014) ("Assuming that [p]laintiff filed a timely grievance ... and received no response within five business days [,] ... [p]laintiff ... could have taken the next step and requested a hearing."); *Leacock v. N.Y.C. Health Hosp. Corp.*, No. 03-cv-5440 (RMB) (GWG), 2005 WL 483363, at *7 (S.D.N.Y. Mar. 1, 2005) ("[T]hat [plaintiff] allegedly did not receive a response to her grievance does not excuse her from failing to exhaust the appellate remedies available to her."); *Burns v. Moore*, No. 99-cv-966 (LMM) (THK), 2002 WL 91607, at *8 (S.D.N.Y. Jan. 24, 2002) ("Thus, even if [p]laintiff received no response to his initial grievance, [p]laintiff could have sought the next level of review, in this case, to the prison superintendent.").

**\*4** At the OBCC, where Plaintiff was incarcerated, an inmate must exhaust several layers of review, even if the inmate does not receive a timely disposition at the initial stages. (56.1 Stmt. ¶ 12–14.) Here, as Plaintiff reveals in his own complaint and brief in opposition to the motion for summary judgment, he did not exhaust the OBCC administrative procedure. (Compl. 7–8; Opp'n 6.) Rather, he indicates that he filed a grievance but otherwise did not appeal or seek further review through the IGRP process. (Compl. 7–8 (noting that he is "still waiting" for disposition of his grievances and did not seek review at the next levels within IGRP); Opp'n 6 (noting that he filed "several grievances about the issues in question," but omitting reference to any specific steps taken to appeal)). Accordingly, Plaintiff failed to satisfy the PLRA exhaustion requirement.

The Court next considers whether there is any basis for excusing Plaintiff's failure to exhaust administrative remedies at the IGRP. Last month, the Supreme Court forcefully disapproved of judge-made exceptions to the PLRA's exhaustion requirement, stressing the mandatory language of the statute. *See Ross*, 136 S. Ct. at 1862 ("Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement.") In doing so, the Supreme Court expressly

rejected the Second Circuit's prior framework under *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004), and, by extension, *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004), which recognized a "special circumstances" exception to the PLRA's exhaustion requirement. *See Williams v. Priatno*, No. 14-4777, ___ F.3d. ___, ___, 2016 WL 3729383, at *4 (2d Cir. July 12, 2016) ("[T]o the extent that our special circumstances exception ... permits plaintiffs to file a lawsuit in federal court without first exhausting administrative remedies that were, *in fact*, available to them, those aspects of *Giano* and *Hemphill* are abrogated by *Ross*.").

Thus, post-*Ross*, the lone surviving exception to the PLRA's exhaustion requirement is that embedded in its text: that an inmate need only exhaust those administrative remedies that are "available" to him. *Ross*, 136 S. Ct. at 1862; *see also* 43 U.S.C. § 1997e(a). An inmate's failure to exhaust may therefore be excused when his prison's grievance mechanisms are literally or constructively "unavailable." *Ross*, 136 S. Ct. at 1858–59. The Supreme Court described three scenarios in which administrative procedures could be "officially on the books," but "not capable of use to obtain relief," and therefore unavailable. *Id.* While not exhaustive, these illustrations nonetheless guide the Court's inquiry. *See Williams*, 2016 WL 3729383, at *4 n.2. First, an administrative procedure is unavailable when "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to inmates." *Ross*, 136 S. Ct. at 1859. If prison administrators either lack the necessary authority to provide any relief or possess authority but consistently decline to exercise it, the administrative channels are not "available" within the meaning of the PLRA. *Id.*; *see also Booth v. Churner*, 523 U.S. 731, 736, 738 (2001) ("[T]he modifier 'available' requires the possibility of some relief."). Second, an administrative procedure is unavailable where it is "so opaque that it becomes, practically speaking, incapable of use." *Id.* To meet this high bar, the administrative remedy must be "essentially 'unknowable.' " *Id.* Finally, "a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1860.

Here, Plaintiff has not alleged – let alone shown – that the administrative procedures at the OBCC were unavailable to him. Although Plaintiff's initial grievance received no

response, this alone is insufficient to show that the IGRP acted as a mere dead end. As stated earlier, "the law is well-settled" that an inmate's "failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies." *Garvin*, 2015 WL 3999180, at *3 (collecting authorities). In short, the DOC's untimeliness in this case is not enough to demonstrate the unavailability of an administrative remedy. This is especially true in light of the IGRP's built-in appeal mechanism, whereby inmates may directly proceed to the next level of review in the event of the DOC's failure to respond to a grievance. (*See* IGRP Directive § IV(D) (9)(b), (10).) Furthermore, Plaintiff has not introduced any facts to indicate that prison officials at OBCC are "consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1859.

**\*5** Nor has Plaintiff pointed to any evidence that the IGRP was "so opaque that it [became], practically speaking, incapable of use" and therefore "essentially unknowable." *Ross*, 136 S. Ct. at 1859. While the Second Circuit recently found that certain administrative grievance procedures at a different New York State facility met this standard, the Second Circuit's decision hinged on the "extraordinary circumstances" specific to the case before it, for which the applicable grievance regulations gave "no guidance whatsoever." *See Williams*, 2016 WL 3729383, at *1, *5. Specifically, the plaintiff in *Williams* was housed in a special housing unit and segregated from the regular prison population; therefore, he gave his grievance complaint to a correction officer to file on his behalf. *Williams*, 2016 WL 3729383, at *2. However, the plaintiff in *Williams* alleged that the correction officer to whom he gave his complaint failed to file it, *id.*, and because the Second Circuit concluded that the applicable grievance regulations gave "no guidance whatsoever to an inmate whose grievance was never filed," *id.* at 5, it reversed the District Court's dismissal for failure to exhaust. Here, by contrast the IGRP expressly guides inmates in Plaintiff's position who have filed a grievance but have not received a timely response and directs them to either grant an extension of time to the relevant decisionmaker or to appeal to the next level of review. (*See* IGRP Directive §§ IV(D)(9)(b), (10).) In light of the IGRP's unambiguous directive, Plaintiff has clearly failed to show that the IGRP was "essentially unknowable." *See Ross*, 136 S. Ct. at 1859.

Finally, the Court turns to the third scenario contemplated by the Supreme Court, in which "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859. Plaintiff has not demonstrated, or even suggested, that prison administrators obstructed or interfered with his access to administrative remedies. *See, e.g.,* *Winston v. Woodward*, No. 05-cv-3385 (RJS), 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008) (concluding that plaintiff's failure to exhaust administrative remedies was not excused in light of his "failure to put forth any corroborating evidence, either direct or circumstantial, to support his claims that he suffered retaliation in the form of threats, harassment and mail tampering"). Thus, this exception to the exhaustion requirement is also clearly inapplicable.

Therefore, the Court concludes, as a matter of law, that Plaintiff has failed to exhaust administrative remedies available to him through the IGRP and has failed to offer any facts to prove that administrative remedies were not available to him. Because Plaintiff's claims are barred for failure to comply with the administrative exhaustion requirement of the PLRA, Defendant's motion for summary judgment is granted. [2]

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that Defendant's motion for summary judgment is GRANTED.

Although Plaintiff has paid the filing fee in this action and has not applied to proceed *in forma pauperis*, the Court nevertheless certifies pursuant to 28 U.S.C. § 1915(a)(3) that, in the event Plaintiff seeks to appeal this Order *in forma pauperis*, any appeal would not be taken in good faith.

The Clerk is respectfully directed to terminate the motion pending at docket number 53, to mail a copy of this order to Plaintiff, and to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 3948100

Footnotes

1    The following facts are drawn from Defendant's unopposed Local Civil Rule 56.1 Statement. (Doc. No. 55 ("56.1 Statement" or "56.1 Stmt.").) In deciding Defendant's motion for summary judgment, the Court has also considered Plaintiff's submission in opposition to summary judgment (Doc. No. 58 ("Opp'n")), and has conducted an independent review of the record, notwithstanding Plaintiff's failure to submit a statement compliant with Local Civil Rule 56.1. *See Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d. Cir. 2001) (noting that district court "may in its discretion opt to conduct an assiduous review of the record even when" a party has failed to comply with Local Civil Rule 56.1 (citations and quotation marks omitted)).

2    Although Defendant has raised other grounds for summary judgment, including that Plaintiff has failed to establish an Eighth Amendment conditions of confinement claim, and that Defendant is entitled to qualified immunity, the Court finds it unnecessary to address these other arguments because of Plaintiff's failure to exhaust remedies.

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 1468655
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Raszell REEDER, Plaintiff,

v.

E. Robinson YOUNG, Reg. Nurse, Downstate Corr.
Fac.; E. Wheldon, Nurse Admin., Downstate Corr.
Fac.; Dr. William Vertoske, Dr., Southport Corr.
Fac., f/k/a Bill Nertoske; G. Rigaud, M.D., Primary
Therapist, Southport Corr. Fac.; Paul Daughtery,
Nurse Prac., Southport Corr. Fac.; M. Blauvell,
Reg. Nurse, Eastern Corr. Fac.; V. Riveria, Reg.
Nurse, Eastern Corr. Fac.; E. Liverson, Reg. Nurse,
Eastern Corr. Fac.; C. Lymmerman, Reg. Nurse,
Eastern Corr. Fac.; Z. Blunton, Reg. Nurse, Eastern
Corr. Fac.; A. Jonathan, Nurse Admin., Eastern
Corr. Fac.; Doctor Ryan, Shawangunk Corr. Fac.;
Doctor Valencia, Shawangunk Corr. Fac.; Anthony
Corty Ann, Physician, Shawangunk Corr. Fac.; Mike
Sedar, Reg. Nurse, Shawangunk Corr. Fac.; Silvia
Koole, Nurse, Shawangunk Corr. Fac.; Doctor Choo,
Shawangunk Corr. Fac.; Richard Bunchy, Reg.
Nurse, Shawangunk Corr. Fac.; Doctor Costillo,
Wende Corr. Fac.; Doctor E. Herryman, Doctor,
Wende Corr. Fac.; Doctor C. Ware, Doctor, Wende
Corr. Fac.; Doctor Punzal, Wende Corr. Fac.; Doctor
Deposio, Wende Corr. Fac.; Doctor Qayyam, Wende
Corr. Fac.; B. McNeally, Nurse Admin, Wende
Corr. Fac.; E. William, Reg. Nurse, Wende Corr.
Fac.; Doctor Buscema, Great Meadow Corr. Fac.;
Doctor Qayyum, Great Meadow Corr. Fac.; Carmella
Greasley, Nurse Admin., Great Meadow Corr. Fac.;
C. Brazier, Nurse Admin., Great Meadow Corr. Fac.;
Dr. Vijay Kumar Mandalaywala, Upstate Corr. Fac.,
f/k/a V. Kumar, Doctor W. Goodwin, M.D., Wende
Corr. Fac.; N. Smith, Reg. Nurse, Franklin Corr.
Fac.; K. Holmes, Reg. Nurse, Franklin Corr. Fac.; M.
Burke, Reg. Nurse, Franklin Corr. Fac.; and Doctor
Kim, Doctor I, Franklin Corr. Fac., Defendants.

9:16-CV-1129 (GTS/TWD)
|
Signed 03/26/2018

**Attorneys and Law Firms**

RASZELL REEDER, 94-A-6388, Upstate Correctional
Facility, P.O. Box 2001, Malone, New York 12953, pro se.

HON. ERIC T. SCHNEIDERMAN, Attorney General
of the State of New York, OF COUNSEL: BRIAN
W. MATULA, ESQ., Assistant Attorney General,
The Capitol, Albany, New York 12224, Counsel for
Defendants.

**DECISION and ORDER**

HON. GLENN T. SUDDABY, Chief United States
District Judge

**\*1** Currently before the Court, in this *pro se* prisoner civil
rights action filed by Raszell Reeder ("Plaintiff") against
the thirty-six above-captioned employees of the New
York State Department of Corrections and Community
Supervision ("Defendants"), are the following: (1)
Defendants' motion to dismiss Plaintiff's claims against
eleven Defendants for failure to state a claim pursuant
to Fed. R. Civ. P. 12(b)(6), and to dismiss Plaintiff's
claims against the remaining twenty-five Defendants
for failure to serve pursuant to Fed. R. Civ. P.
4(m); (2) United States Magistrate Judge Thérèse Wiley
Dancks' Report-Recommendation recommending that
Defendants' motion to dismiss be granted as to the
above-referenced eleven Defendants, and that Plaintiff's
claims against the remaining twenty-five Defendants be
*sua sponte* dismissed for failure to state a claim under
28 U.S.C. § 1915(e)(2)(B); (2) Plaintiff's Objection to
the Report-Recommendation; and (4) Plaintiff's letter-
motion for leave to file an Amended Complaint. (Dkt.
Nos. 52, 91, 95, 96.) For the reasons set forth below,
the Report-Recommendation is accepted and adopted
in its entirety; Plaintiff's Complaint is dismissed in its
entirety with prejudice for the reasons stated in the
Report-Recommendation; and Plaintiff's letter-motion to
for leave to file an Amended Complaint is denied.

**I. RELEVANT BACKGROUND**

**A. Magistrate Judge Dancks' Report-Recommendation**
Following the Court's *sua sponte* review of Plaintiff's
Complaint and the issuance of its Decision and Order
of December 6, 2016, the sole remaining claims in this

action were the following: (1) Plaintiff's claim of deliberate indifference to his serious medical needs under the Eighth Amendment against Dr. Vijay Kumar Mandalaywala (originally sued as Dr. Kumar) arising from actions taken after September 6, 2013; and (2) Plaintiff's claims of deliberate indifference to his serious medical needs under the Eighth Amendment against the remaining Defendants arising from actions taken before September 6, 2013, which were allegedly fraudulently concealed. (Dkt. No. 4.)

Generally, in her Report-Recommendation, Magistrate Judge Dancks rendered the following seven findings of fact and conclusions of law: (1) Plaintiff's Eighth Amendment claims against ten Defendants (RN Blauvell, NP Daughtery, RN Sedar, Dr. Vertoske, Dr. Kim, RN Smith, NA Wheldon, RN Burke, Dr. Qayyam, and Dr. Ware) should be dismissed for failure to state a claim on statute-of-limitations grounds because, on closer examination, Plaintiff's Complaint fails to allege facts plausibly suggesting any fraudulent concealment by those Defendants between 1994 and 2003; (2) in the alternative, Plaintiff's Eighth Amendment claims against those ten Defendants should be dismissed for failure to state a claim, because he has failed to allege facts plausibly suggesting one or both of the elements of an Eighth Amendment claim; (3) because there is nothing in Plaintiff's Complaint or the medical records he has submitted that remotely suggests that he would be able to state a claim against these ten Defendants if he were granted leave to amend, his claims against them should be dismissed with prejudice; (4) Plaintiff's Eighth Amendment claims against Defendant Vijay Kumar Mandalaywala should be dismissed for failure to state a claim, because he has failed to allege facts plausibly suggesting one or both of the elements of an Eighth Amendment claim; (5) again, because there is nothing in Plaintiff's Complaint or the medical records he has submitted that remotely suggests that he would be able to state a claim against Defendant Vijay Kumar Mandalaywala if he were granted leave to amend, his claims against him should be dismissed with prejudice; (6) Plaintiff's Eighth Amendment claims against the remaining twenty-five Defendants need not be subjected to a failure-to-serve analysis pursuant to Fed. R. Civ. P. 4(m) because they may be, and should be, *sua sponte* dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for the same reasons as stated above; and (7) because there is nothing in Plaintiff's Complaint or the medical records he has submitted that remotely suggests that he would be able to state a claim against these twenty-

five Defendants if he were granted leave to amend, his claims against them should be dismissed with prejudice. (Dkt. No. 91, at Part IV.)

### B. Plaintiff's Objection to the Report-Recommendation

**\*2** Generally, in his Objections, Plaintiff asserts that his Eighth Amendment claims should not be dismissed because Defendants failed to properly screen and treat him for genital herpes and thyroid cancer, failed to provide him necessary medication, and failed to update his medical records to indicate that he had genital herpes and thyroid cancer, causing him to endure years of physical and mental suffering and preventing him from receiving proper diagnosis and treatment. (Dkt. No. 95.)

## II. STANDARD OF REVIEW

When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c). [1] When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance. [2] Similarly, a district court will ordinarily refuse to consider argument that could have been, but was not, presented to the magistrate judge in the first instance. *See Zhao v. State Univ. of N.Y.*, 04-CV-0210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley*, 752 F. Supp.2d 311, 312-13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted).

**\*3** When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999). Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review.[3] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*[4]

After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

### III. ANALYSIS

Out of special solicitude to Plaintiff, the Court will assume that his Objections contain specific challenges to each portion of a Magistrate Judge Dancks' Report-Recommendation and present arguments not already presented to Magistrate Judge Dancks (although these facts are highly questionable).[5] (*Compare* Dkt. No. 95, at 2-12 [Plf.'s Obj.] *with* Dkt. No. 91, at 7-23 [Report-Recommendation] *and* Dkt. No. 58 [Plf.'s Opp. Mem. of Law].)

After carefully reviewing the relevant papers herein, including Magistrate Judge Dancks' thorough Report-Recommendation, the Court can find no error in the Report-Recommendation: Magistrate Judge Dancks employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons stated therein. (Dkt. No. 91.)

Turning to Plaintiff's letter-motion for leave to file an Amended Complaint, the Court need not deny that letter-motion due to its lack of the required accompanying redline/strikeout version of his proposed Amended Complaint in violation of Local Rule 7.1(a)(3). This is because, as Magistrate Judge Dancks found, the Court has found nothing in any of Plaintiff's filings suggesting that he would be able to state a claim against any of the Defendants if he were granted leave to amend.[6] The Court renders this finding even after carefully combing through the (non-redline/strike version of) Plaintiff's proposed Amended Complaint and attachments thereto, which he submitted with his Objection. (Dkt. No. 95, at 13-108.) Simply stated, Plaintiff's proposed Amended Complaint does not cure the defects contained in his original Complaint. (*Compare id. with* Dkt. No. 1.)

**\*4 ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Dancks' Report-Recommendation (Dkt. No. 91) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Defendants' motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 52) is **GRANTED** as to Defendants RN Blauvell, NP Daughtery, RN Sedar, Dr. Vertoske, Dr. Kim, RN Smith, NA Wheldon, RN Burke, Dr. Qayyam, Dr. Ware, and Dr. Vijay Kumar Mandalaywala, and Plaintiff's claims against them are **DISMISSED with prejudice**; and it is further

**ORDERED** that Plaintiff's remaining claims against the remaining twenty-five Defendants listed in the caption of this Decision and Order are *sua sponte* **DISMISSED with prejudice** for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that Plaintiff's letter-motion for leave to file an Amended Complaint (Dkt. No. 96) is **DENIED**.

The Court certifies that any appeal from this Decision and Order would not be taken in good faith.

### All Citations

Slip Copy, 2018 WL 1468655

Footnotes

1    *See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

2    *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (finding that district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

3    *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at *1, n.1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at *3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

4    *See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

5    For example, the Court notes that the arguments presented in Paragraph 1 through 19 of Plaintiff's Objection appear to be merely a reiteration of arguments presented in Paragraph 3 and 4 of his opposition memorandum of law. (*Compare* Dkt. No. 95, at ¶¶ 1-19 [Plf.'s Obj.] with Dkt. No. 58, at ¶¶ 3-4 [Plf.'s Opp'n Memo. of Law].)

6    Leave to amend is not required where the defects in a complaint are substantive rather than merely formal, such that any amendment would not cure them. As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993), *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile."). This rule applies even to pro se plaintiffs. *See, e.g., Cuoco v. Moritsugu*, 222 F.3d 99, 103 (2d Cir. 2000); *Brown*, 1997 WL 599355, at *1.

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Reeder v. Young, Not Reported in Fed. Supp. (2017)

2017 WL 564526

2017 WL 564526
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Raszell REEDER, Plaintiff,

v.

E. Robinson YOUNG, et al., Defendants.

9:16-CV-1129 (GTS/TWD)
|
Signed 02/13/2017

**Attorneys and Law Firms**

RASZELL REEDER, 94-A-6388, Upstate Correctional
Facility, P.O. Box 2001, Malone, NY 12953, Plaintiff, pro
se.

**DECISION AND ORDER**

GLENN T. SUDDABY, Chief United States District
Judge

**\*1** Plaintiff Raszell Reeder commenced this action by
submitting a pro se civil rights complaint pursuant to
42 U.S.C. § 1983 ("Section 1983") together with an
application to proceed in forma pauperis. Dkt. No. 1
("Compl."), Dkt. No. 2 ("IFP Application"). In his
complaint, plaintiff asserted allegations of wrongdoing
against more than seventy defendants including, but not
limited to, staff employed at multiple state correctional
facilities, the New York State Department of Corrections
and Community Supervision ("DOCCS") Central Office,
and the New York State Office of Mental Health.
*See generally* Compl. The wrongdoing alleged in the
complaint dated back to 1985, and allegedly occurred
while plaintiff was housed as a juvenile at Spafford
Juvenile Delinquent Facility and Highland Juvenile
Delinquent Facility; and while an inmate in the custody
of DOCCS at Downstate Correctional Facility, Clinton
Correctional Facility, Southport Correctional Facility,
Eastern New York Correctional Facility, Shawangunk
Correctional Facility, Wende Correctional Facility, Great
Meadow Correctional Facility, Central New York
Psychiatric Center, Attica Correctional Facility, Auburn
Correctional Facility, Upstate Correctional Facility, and
Franklin Correctional Facility. *Id.*

By Decision and Order filed December 6, 2016, plaintiff's
IFP Application was granted and the sufficiency of
the complaint was considered in accordance with 28
U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).
Dkt. No. 4 (the "December 2016 Order"). Accepting
plaintiff's allegations as true for the purposes of the
review, plaintiff alleged that he has suffered from
thyroid cancer and herpes as far back as 1985, but the
defendants failed to disclose these conditions to him
or treat him for the conditions. *See generally* Compl.
The Court construed plaintiff's complaint to assert
Eighth Amendment medical indifference claims against all
defendants. After conducting its review, the Court found
that the Eighth Amendment medical indifference claims
against defendants E. Robinson Young, E. Wheldon,
Bill Nertoske, G. Rigaud, Paul Daughtery, M. Blauvell,
V. Riveria, E. Liverson, C. Lymmerman, Z. Blunton,
A. Jonathan, Doctor Ryan, Doctor Valencia, Anthony
Corty Ann, Mike Sedar, Silvia Koole, Doctor Choo,
Richard Bunchy, Doctor Costillo, Doctor E. Herryman,
Doctor C. Ware, Doctor Punzal, Doctor Deposio, Doctor
Qayyam (Wende Correctional Facility), B. McNeally,
E. William, Doctor Buscema, Doctor Qayyum (Great
Meadow Correctional Facility), Carmella Greasley, C.
Brazier, Doctor V. Kumar, Doctor W. Goodwin, N.
Smith (Registered Nurse, Franklin Correctional Facility),
K. Holmes, M. Burke, and Doctor Kim survived
sua sponte review and required a response. December
2016 Order at 20.[1] The Eighth Amendment medical
indifference claims against the remaining defendants were
dismissed without prejudice pursuant to 28 U.S.C. §
1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state
a claim upon which relief may be granted. December 2016
Order at 21.

**\*2** Presently before the Court is plaintiff's motion
seeking reconsideration of the December 2016 Order.
Dkt. No. 7. Plaintiff asks the Court to re-instate the
Eighth Amendment medical indifference claims against
the defendants that were dismissed in the December 2016
Order. *Id.*

A court may justifiably reconsider its previous ruling if:
(1) there is an intervening change in the controlling law;
(2) new evidence not previously available comes to light;
or (3) it becomes necessary to remedy a clear error of
law or to prevent manifest injustice. *Delaney v. Selsky*,
899 F. Supp. 923, 925 (N.D.N.Y. 1995) (McAvoy, C.J.)
(citing *Doe v. New York City Dep't of Soc. Servs.*, 709

Case 9:17-cv-01303-BKS-TWD   Document 38   Filed 12/06/18   Page 41 of 62
**Reeder v. Young, Not Reported in Fed. Supp. (2017)**
2017 WL 564526

F.2d 782, 789 (2d Cir. 1983)). The standard for granting a motion for reconsideration is strict. *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Id.* [2] Thus, a motion for reconsideration is not to be used for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

Plaintiff does not suggest that there has been an intervening change in the controlling law, nor has he presented new evidence which was not previously available. Therefore, the only basis for reconsideration is to remedy a clear error of law or to prevent manifest injustice. After thoroughly reviewing plaintiff's motion and affording it due consideration in light of his status as a pro se litigant, the Court finds that plaintiff presents no basis for reconsideration of the December 2016 Order.

Based upon a review of the relevant law and its application to the facts of this case, the Court concludes that its previous decision was legally correct and did not work a manifest injustice. Thus, plaintiff's motion for reconsideration of the December 2016 Order is denied in its entirety.

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's motion for reconsideration (Dkt. No. 7) is **DENIED** in all respects; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 564526

---

Footnotes

1    Summonses were issued for these defendants, *see* Dkt. No. 10, and service is ongoing.
2    Generally, motions for reconsideration are not granted unless "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.*

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 4693153
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Raymond ROBLES, Plaintiff,
v.
K. BLEAU, Correctional Officer, Riverview C.F.;
Peacock, Correctional Sergeant, Riverview C.F.;
R. Varkiar, Senior Counsel, Riverview C.F.; and
New York State Dep't of Corr. Servs., Defendants.

No. 9:07-CV-0464.
|
Oct. 22, 2008.

**Attorneys and Law Firms**

Raymond Robles, Cape Vincent, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State
of New York, David L. Cochran, Esq., of Counsel, New
York, NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior District Judge.

**\*1** This *pro se* civil rights action, brought pursuant to
42 U.S.C. § 1983, was referred to the Hon. George H.
Lowe, United States Magistrate Judge, for a Report-
Recommendation pursuant to 28 U.S.C. § 636(b) and
Local Rule 72.3(c).

The Report-Recommendation dated September 12, 2008
recommended that Defendants motion to dismiss be
granted in part and denied in part. Specifically,
Judge Lowe recommended that Plaintiff's Fourteenth
Amendment procedural due process claim against
Defendant Varkiar regarding his disciplinary hearing
be dismissed if, within thirty (30) days from the
filing of this Final Order, Plaintiff does not file
an Amended Complaint that successfully states a
Fourteenth Amendment procedural due process claim.
It was recommended that Plaintiff's remaining claims be
dismissed with prejudice.

Plaintiff filed objections to the Report-Recommendation,
essentially raising the same arguments presented to the
Magistrate Judge.

When objections to a magistrate judge's Report-
Recommendation are lodged, the Court makes a *"de
novo* determination of those portions of the report or
specified proposed findings or recommendations to which
objection is made." *See* 28 U.S.C. § 636(b)(1). After such a
review, the Court may "accept, reject, or modify, in whole
or in part, the findings or recommendations made by
the magistrate judge. The judge may also receive further
evidence or recommit the matter to the magistrate judge
with instructions." *Id.*

Having reviewed the record *de novo* and having considered
the issues raised in the Plaintiff's objections, this Court
has determined to accept and adopt the recommendation
of Magistrate Judge Lowe for the reasons stated in the
Report-Recommendation.

It is therefore

**ORDERED** that Defendants motion to dismiss be
**GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

*REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, commenced
pursuant to 42 U.S.C. § 1983, has been referred to me
by the Honorable Thomas J. McAvoy, Senior United
States District Judge, for Report and Recommendation
with regard to any dispositive motions filed, pursuant to
28 U.S.C. § 636(b) and Local Rule 72.3(c). Generally,
in his Complaint, Raymond Robles ("Plaintiff") alleges
that three employees of the New York State Department
of Correctional Services ("DOCS"), as well as DOCS
itself, violated his rights under the Eighth and Fourteenth
Amendments when they (1) required him to submit to
a random urinalysis test when they knew he was taking
a medication that would prevent him from providing a
urine sample, and (2) charged, convicted, and punished
him with eighty-seven days in a Special Housing Unit for
refusing to provide a urine sample. (*See generally* Dkt. No.
1 [Plf.'s Compl.].) Currently pending before the Court is

**Robles v. Bleau, Not Reported in F.Supp.2d (2008)**
Case 9:17-cv-01303-BKS-TWD   Document 38   Filed 12/06/18   Page 43 of 62
2008 WL 4693153

Defendants' motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 16.) For the reasons that follow, I recommend that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

### A. Summary of Plaintiff's Complaint
**\*2** As Defendants correctly observe in their Memorandum of Law, Plaintiff's Complaint-which describes the events giving rise to his claims in two brief paragraphs without identifying any role played by Defendants in those events-is hardly a model of *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.].) However, as explained below in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[1] Here, I find that the factual allegations contained in Plaintiff's Response Affidavit are consistent with the factual allegations of his Complaint. As a result, in construing Plaintiff's Complaint, I will consider his Response Affidavit as effectively amending the factual allegations of his Complaint. Thus construed, Plaintiff's Complaint alleges as follows:

1. On November 6, 2006, at about 7:28 a.m., Plaintiff was directed to report to the drug testing center at Riverview C.F.;[2]

2. Upon arriving at the drug testing center, Plaintiff was informed by Correctional Officer K. Bleau ("Defendant Bleau") that he had been randomly selected to submit to urinalysis drug testing;[3]

3. Defendant Bleau asked Plaintiff if he would provide a urine sample, and Plaintiff responded yes;[4]

4. Defendant Bleau then asked Plaintiff if he was taking any medications, and Plaintiff explained that (1) yes, he was taking Flomax and Omeprazole due to a prostate condition and a stomach problem, and (2) "d[ue] to the medication [s]" and the fact that he had used the bathroom at approximately 7:10 a.m. that morning, he would need more water in order to urinate;[5]

5. As Plaintiff was explaining these facts to Defendant Bleau, Defendant Bleau became upset and walked away from Plaintiff;[6]

6. When he returned, Defendant Bleau then informed Plaintiff that, pursuant to DOCS Directive 4937, Plaintiff had three hours provide a urine sample or he would be considered to be refusing to provide the urine sample;[7]

7. Defendant Bleau then gave Plaintiff a cup of water at approximately 7:30 a.m., and a second cup of water at approximately 9:30 a.m., but did not give him a third cup of water at approximately 8:30 a.m., as required by Part D.4. of DOCS Directive 4937;[8]

8. At approximately 10:30 a.m., Plaintiff was still unable to provide a urine sample;[9]

9. At that time, Defendant Bleau notified Correctional Sergeant Peacock ("Defendant Peacock") that Plaintiff was refusing a direct order to provide a urine sample;[10]

10. When Plaintiff tried to explain to Defendant Peacock that his medical condition prevented him from providing the urine sample, Defendant Peacock responded, "Shut up and put [your] hands behind [your] back";[11]

**\*3** 11. Both Defendants Bleau and Peacock failed to investigate or inquire as to why Plaintiff had been prescribed Flomax and Omeprazole, or what the potential side effects of those drugs were, although that information was readily obtainable from medical staff at Riverview C.F.;[12]

12. Instead, Defendants Bleau and/or Peacock escorted Plaintiff to the Riverview C.F. Special Housing Unit ("S.H.U.");[13]

13. On November 7, 2006, at about 8:55 a.m., while Plaintiff was in S.H.U., he was served with a copy of a misbehavior report authored by Defendant Bleau, charging him with (1) failing to comply with the urinalysis testing procedure, and (2) refusing a direct order to provide a urine sample;[14]

14. On November 10, 2006, Senior Correctional Counselor R. Varkiar conducted Plaintiff's disciplinary hearing on the misbehavior report; [15]

15. At the hearing, when Plaintiff entered a plea of "Not guilty, with an explanation," Defendant Varkiar gave Plaintiff "an opportunity to explain [him] self"; [16]

16. Plaintiff explained that he had a medical condition that prevented him from providing a urine sample, that he had attempted to inform Defendant Bleau of this medical condition (but Defendant Bleau walked away from Plaintiff), and that he had attempted to inform Defendant Peacock of this medical condition (but Defendant Peacock told Plaintiff to "[s]hut up"); [17]

17. Defendant Varkiar then made a telephone call; when he was done with the call, he told Plaintiff that (1) he had called the medical unit at Riverview C.F. to ask whether or not the medication that Plaintiff was taking would prevent him from urinating, and (2) someone in the medical unit had responded that no, the medication should not prevent Plaintiff from urinating; [18]

18. Plaintiff then attempted to explain to Defendant Varkiar *why* he was taking one of the medications, specifically, to remedy a prostate problem that itself interfered with his ability to urinate; [19]

19. However, Defendant Varkiar failed to call back the person in the medical unit at Riverview C.F. and request that he or she again answer the question he had posed before, taking into account Plaintiff's prostate condition as shown by his medical records; [20]

20. As a result, Defendant Varkiar found Plaintiff guilty of both disciplinary charges, and sentenced him to ninety (90) days in S.H.U ., with a corresponding loss of privileges; [21]

21. At the conclusion of the hearing, Plaintiff received a written copy of the hearing disposition, which stated that the evidence relied on included (1) the statements in the written misbehavior report of Defendant Bleau (which Defendant Varkiar stated were credible), and (2) Plaintiff's

own hearing testimony (which Defendant Varkiar stated was not credible); [22]

22. On November 27, 2006, Plaintiff appealed his conviction to DOCS Director of Special Housing, Donald Selsky, who reversed the conviction on January 19, 2007; [23] and

*4 23. On February 1, 2007, Plaintiff was finally released from S.H.U., after spending eighty-seven (87) days there. [24]

It should be noted that, in addition to asserting constitutional claims against Defendants Bleau, Peacock, and Varkiar in their individual or personal capacities, Plaintiff's Complaint asserts a constitutional claim also against DOCS itself. It should also be noted that, as relief for Defendants' actions, Plaintiff requests money damages but no injunctive relief. [25]

### B. Summary of Grounds in Support of Defendants' Motion

Generally, Defendants' motion to dismiss for failure to state a claim is premised on two grounds: (1) Plaintiff's claim against DOCS is barred by the Eleventh Amendment; and (2) the allegations of Plaintiff's Complaint are too lacking in detail to give Defendants *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 2-5 [Defs.' Memo. of Law].)

## II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Fed.R.Civ.P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a) (2); [26] or (2) a challenge to the legal cognizability of the claim. [27]

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a short and plain statement that

"give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." [28] The main purpose of this rule is to "facilitate a proper decision on the merits." [29] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [30]

The Supreme Court has long characterized this pleading requirement under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. [31] However, it is well established that even this liberal notice pleading standard "has its limits." [32] As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard. [33]

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly*, the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007). [34] Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Fed.R.Civ.P. 8 "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74.

**\*5** More specifically, the Court reasoned that, by requiring that a pleading "show[ ] that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id.* at 1965, n. 3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading contain at least "some factual allegation[s]." *Id.* [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of

course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.*

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Twombly* ). [35] The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude normally afforded *pro se* litigants). [36]

It should be emphasized that Fed.R.Civ.P. 8's plausibly standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [citation omitted]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley v. Gibson,* 355 U.S. 41, 47 [1957] ). That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever. [37] There must still be enough fact alleged to raise a right to relief above the speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [38] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the

complaint is submitted *pro se*." [39] In other words, as stated above, while all pleadings are to be construed liberally under Fed.R.Civ.P. 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality . [40]

**\*6** For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [41] Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." [42] Furthermore, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [43] Of course, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." [44] In addition, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading. [45]

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed), [46] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12. [47] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [48] Stated more plainly, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended." [49]

### III. ANALYSIS

#### A. Whether Plaintiff's Claim Against DOCS is Barred by the Eleventh Amendment

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's constitutional claims against Defendant DOCS are barred by the Eleventh Amendment to the United States

Constitution. (Dkt. No. 16, Part 2, at 2-3 [Defs.' Mem. of Law].) In the interest of brevity, I will not repeat the well-established points of law that they correctly cite in support of their argument. Instead, I will only add three points that Defendants do *not* make in their succinct argument: (1) where it has been successfully demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the case (or claim), and "the case [or claim] *must* be stricken from the docket"; [50] (2) Plaintiff's civil rights claims against Defendant DOCS (an entity) are barred also by the express language of 42 U.S.C. § 1983, which confers liability upon only any "*person* who ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ...." [51]; and (3) because the defect with this claim is substantive rather than merely formal, better pleading will not cure it, and thus it should be dismissed with prejudice. [52]

**\*7** For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's claims against Defendant DOCS.

It should be noted that, in addition to barring Plaintiff's constitutional claims against Defendant DOCS, the Eleventh Amendment would also bar any claim by Plaintiff against Defendants Bleau, Peacock and Varkiar in their official capacities. [53] However, because I do not even liberally construe Plaintiff's Complaint (and Response Affidavit) as asserting such claims, no need exists to recommend the dismissal of those claims. (*See generally* Dkt. No 1, 17.)

#### B. Whether the Allegations of Plaintiff's Complaint Are Too Lacking in Detail to Give Defendants *Fair Notice* under Fed.R.Civ.P. 8(a)(2)

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's Complaint-when considered alone-is too lacking in detail to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 3-5 [Defs.' Mem. of Law].) However, as explained above in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending

**Robles v. Bleau, Not Reported in F.Supp.2d (2008)**
Case 9:17-cv-01303-BKS-TWD   Document 38   Filed 12/06/18   Page 47 of 62
2008 WL 4693153

the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [54] Here, when construing Plaintiff's Complaint together with his Response Affidavit, I find that Plaintiff's allegations *are* detailed enough to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2). *See, supra,* Part I.A. of this Report-Recommendation.

However, this does not end the Court's analysis of Plaintiff's Complaint because, even where a defendant has not advanced a certain argument on a motion to dismiss in a *pro se* prisoner civil rights case, a district court may (and, indeed, has a duty to) *sua sponte* address whether the pleading in such a case has successfully stated a claim upon which relief may be granted. [55] Here, Plaintiff's Complaint is plagued by several defects (some substantive and some formal) [56] that simply cannot be overlooked.

### C. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau, Peacock and Varkiar Arising Out of Plaintiff's Being Required to Provide a Urine Sample Given Their Knowledge of His Medications and/or Medical Condition

Among Plaintiff's claims is a claim that "[i]t is neither lawful nor [ ] reasonable to expect an Inmate to perform a bodily function on command when you know or should know that his medical condition and prescribed treatment plan indicate that when he urinates[,] and when he [can] not[,] can be beyond his control." (Dkt. No. 17, at 5 [Plf.'s Response Affid.].) I liberally construe this claim as one of harassment or perhaps inadequate-prison-conditions under the Eighth Amendment. (To the extent that this allegation is also used to support a procedural due process claim under the Fourteenth Amendment, I address that claim below in Parts III.D. and III.E. of this Report-Recommendation.)

**\*8** The problem with Plaintiff's Eighth Amendment claim is that the rather detailed facts alleged by him in support of that claim do not suggest in any way that any of the three individual Defendants were acting with the sort of mental state that is required for them to incur liability under the Eighth Amendment, namely, *deliberate indifference.* Deliberate indifference is a state of mind akin to *criminal recklessness,* which involves *knowing* of and disregarding an excessive risk to inmate health or safety. [57] Here, Plaintiff himself alleges that the

three individual Defendants did not in fact *understand* that he could not urinate due to his prostate condition. Indeed, as he was trying to explain his medical condition to Defendants, (1) Defendant Bleau became angry and "walked away" from Plaintiff, (2) Defendant Peacock told Plaintiff to "[s]hut up," and (3) Defendant Varkiar failed to call back the person in the medical unit of Riverview C.F. and ask him or her to report (to Varkiar) the impact of Plaintiff's prostate condition on his ability to urinate. *See, supra,* Part I.A. of this Report-Recommendation. [58]

At its heart, Plaintiff's Eighth Amendment claim alleges that the three individual Defendants *should have known* that he could not urinate during the time in question due to his enlarged prostate, but that they did not know that fact because they *failed to investigate* the nature and effects of his prostate condition. In other words, his Eighth Amendment claim is one of *negligence.* Such a claim is simply not actionable under the Eighth Amendment (or any constitutional provision). As is often observed, "[D]eliberate indifference describes a state of mind more blameworthy than negligence." [59] Finally, because the defect with this detailed claim is substantive rather than merely formal, I find that better pleading will not cure it. [60]

For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Eighth Amendment claim.

### D. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau and Peacock Arising Out of His Receipt of an Erroneous or False Misbehavior Report

It is well established that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citing *Freeman v. Rideout,* 808 F.2d 949, 951 [2d Cir.1986] ). [61] Rather, the only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there is "more, such as retaliation against the prisoner for exercising a constitutional right." *Boddie,* 105 F.3d at 862; *accord, Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *26, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.) [citations omitted].

Here, Plaintiff alleges no actionable conduct regarding his being issued the misbehavior report in question, such as retaliation against him for exercising a constitutional right. *See, supra,* Part I.A. of this Report-Recommendation. Moreover, because the defect with this detailed claim is substantive rather than merely formal, I find that better pleading will not cure it. [62]

**\*9** For these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Fourteenth Amendment false-misbehavior-report claim.

### E. Whether Plaintiff Has Stated an Actionable Claim Against Defendant Varkiar Arising Out of Plaintiff's Erroneous or Unjustified Disciplinary Conviction

"[Courts] examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State ...; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient .... " *Kentucky Dept. of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). With regard to the first question, in 1995, the Supreme Court held in *Sandin v. Connor* that liberty interests protected by the Fourteenth Amendment's Due Process Clause will not arise from the use of mandatory language of a particular state law or regulation, but "will generally be limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor,* 515 U.S. 472, 483-484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Here, Plaintiff alleges that the disciplinary hearing conducted by Defendant Varkiar resulted in a sentence of eighty-seven (87) days in the Riverview C.F. S.H.U. with a corresponding loss of privileges. *See, supra,* Part I.A. of this Report-Recommendation. Numerous district courts in this Circuit have issued well-reasoned decisions finding no atypical and significant hardship experienced by inmates who served sentences in S.H.U. of far more than the eighty-seven (87) days alleged here-even where the conditions of confinement in the S.H.U. were, to varying degrees, more restrictive than those in the prison's general population. [63] As a result, I find that Plaintiff has not alleged facts plausibly suggesting that he possessed, during the disciplinary hearing, a liberty interest that was protected by the Fourteenth Amendment.

However, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice. This is because it is conceivable to me that Plaintiff's Complaint and Response Affidavit-which are silent with regard to the conditions of confinement he experienced in the Riverview C.F. S.H.U.-may be amended so as to allege facts plausibly suggesting that those conditions were so restrictive as to impose on Plaintiff an *atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life* (thus conferring on him a protected liberty interest under the Fourteenth Amendment).

I should also point out that, even assuming (for the sake of argument) that Plaintiff possessed a protected liberty interest with regard to his disciplinary hearing, I find that he has alleged facts plausibly suggesting that he was, in fact, given all the process that he was due under the circumstances. Specifically, Plaintiff alleges that he was given the following: (1) timely notice of the misbehavior report: (2) an "opportunity to explain [him]self" at his disciplinary hearing; (3) a written disciplinary hearing disposition; (4) a disciplinary hearing disposition that was based on at least some evidence (e.g., his own hearing testimony, which Defendant Varkiar found to be not credible); and (5) an opportunity to appeal the disciplinary hearing disposition (which he did so successfully). *See, supra,* Part I.A. of this Report-Recommendation.

**\*10** Of course, the defect that Plaintiff alleges occurred at his disciplinary hearing was Defendant Varkiar's failure to use the telephone to call back the person in the medical unit at Riverview C .F. and request that he or she again answer the question of whether Plaintiff was physically unable to urinate, taking into account his prostate condition as shown by his medical records. *Id.* Generally, it is not the duty of an impartial hearing officer to conduct an investigation of the merit of the disciplinary charges against an inmate; rather, the duty of a hearing officer is merely to review the evidence presented to him at the disciplinary hearing, and in *certain circumstances* identify defense witnesses for the inmate. [64] Here, I find that Plaintiff has alleged no circumstances conferring on Defendant Varkiar a duty to call back the medical unit at Riverview C.F. For example, I find that Plaintiff's Complaint and Response Affidavit are devoid of any allegation that, at his disciplinary hearing, he requested and was denied an adjournment of the hearing so that, with the help of a legal assistant, he could obtain his

medical records and call as a witness a member of the medical unit, in order that he himself could introduce testimony that his prostate condition prevented him from urinating during the time in question. *See, supra,* Part I.A. of this Report-Recommendation. However, again, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice, because it is conceivable to me that Plaintiff's Complaint and Response Affidavit may be amended to allege facts plausibly suggesting that, at his disciplinary hearing, he made, and was denied, such a request.

For these reasons, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment procedural due process claim regarding his disciplinary hearing if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing.

Finally, two points bear mentioning. First, to the extent that Plaintiff is attempting to allege that his procedural due process rights were violated at his disciplinary hearing also because Defendant Bleau violated Part D.4. of DOCS Directive 4937 by giving Plaintiff only two cups of water during the three-hour period in question, that allegation is not actionable under the circumstances. Section 1983 provides, in pertinent part, "Every person who ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by *the Constitution and laws,* shall be liable to the party injured ...." 42 U.S.C. § 1983 [emphasis added]. The term "the Constitution and laws" refers to the United States Constitution and *federal* laws. [65] A violation of a state law or regulation, *in and of itself,* does not give rise to liability under 42 U.S.C. § 1983. [66] Furthermore, the violation of a DOCS Directive, alone, is not even a violation of New York State law or regulation; [67] this is because a DOCS Directive is "merely a system the [DOCS] Commissioner has established to assist him in exercising his discretion," which he retains, despite any violation of that Directive. [68]

**\*11** Second, in making the above recommendation (that Plaintiff be required to file an Amended Complaint that successfully states a Fourteenth Amendment procedural

due process claim regarding his disciplinary hearing, upon penalty of dismissal), I am in no way "issuing specific instructions [to Plaintiff] mandating the content and format of the putative amended complaint"-instructions that the Second Circuit recently found erroneous in the case of *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at \*6 (2d Cir. Aug.12, 2008). Rather, I am merely reporting my finding that Plaintiff's current Fourteenth Amendment procedural due process claim regarding his disciplinary hearing fails to state a claim upon which relief might be granted, as pleaded.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 16) be **GRANTED in part** and **DENIED in part** in the following respects:

(1) Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Varkiar regarding his disciplinary hearing be **DISMISSED** if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing; and

(2) The other claims asserted in Plaintiff's Complaint (as effectively amended by his Response Affidavit) be **DISMISSED** with prejudice, and without condition.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day).** *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed.R.Civ.P. 6(a)(2), (d).

**BE ADVISED that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/ or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.** [69]

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered.** *Roldan v. Racette,*

Robles v. Bleau, Not Reported in F.Supp.2d (2008)
Case 9:17-cv-01303-BKS-TWD   Document 38   Filed 12/06/18   Page 50 of 62
2008 WL 4693153

984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of H.H.S.,* 892 F.2d 15 [2d Cir.1989] ).

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 4693153

Footnotes

30    *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion), *accord, Hudson v. Artuz,* 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov.30, 1998), *Flores v. Bessereau,* 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J .). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

1    *See, infra,* note 41 of this Report-Recommendation (citing cases).

2    (Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

3    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

4    (Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"].)

5    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

6    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

7    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid ., attaching page from DOCS Directive 4937].)

8    (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid., attaching page from DOCS Directive 4937].)

9    (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf .'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

10    (Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

11    (Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

12    (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 9 [Ex. 2 to Plf.'s Response Affid., attaching page of his Ambulatory Health Record].)

13    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

14    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid ., attaching Inmate Misbehavior Report].)

15    (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

16    (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

17    (*Id.*)

18    (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

19    (Dkt. No. 17, at 2-3 [Plf.'s Response Affid.]; Dkt. No. 17, at 14-15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid., attaching page of information about Flomax].)

20    (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid ., attaching page of information about Flomax].)

21    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

2008 WL 4693153

22   (Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 3 [Plf.'s Response Affid.].)

23   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3-4 [Plf.'s Response Affid.]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 16 [Ex. 8 to Plf.'s Response Affid., attaching Donald Selsky's Review of Superintendent's Hearing, issued on January 19, 2007].)

24   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 2 [Plf.'s Response Affid.].)

25   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].)

26   *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the plaintiff is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

27   *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ( "Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ] .") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5, 2004 WL 2613993 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7, 2002 WL 313156 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b] [6] motion-one aimed at the sufficiency of the pleadings under Rule 8 [a], and the other aimed at the legal sufficiency of the claims).

28   *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz,* 534 U .S. at 512 [citation omitted]; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) [citation omitted].

29   *Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48); *see also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted]

31   *See, e.g., Swierkiewicz,* 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

32   2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

33   *See, e.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1964-1974, 167 L.Ed.2d 929 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Dura Pharmaceuticals,* 125 S.Ct. at 1634-1635, *Christopher v. Harbury,* 536 U.S. 403, 416-422, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary

affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

34    The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint.... *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly,* 127 S.Ct. at 1969.

35    *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.' ") [citation omitted]; *Goldstein v. Pataki,* 07-CV-2537, 2008 U.S.App. LEXIS 2241, at *14, 2008 WL 269100 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Twombly* requires ... that the complaint's "[f]actual allegations be enough to raise a right to relief above the speculative level ....' ") [internal citation omitted]; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98, n. 2 (2d Cir.2007) ("We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible."* ) [emphasis in original].

36    *See, e.g., Jacobs v. Mostow,* 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.' ") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1] ); *Boykin v. KeyCorp.,* 521 F.3d 202, 215-16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a *"plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

37    For example, in *Erickson,* a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S.Ct. at 2199. The Supreme Court vacated and remanded the case because (1) under Fed.R.Civ.P. 8 and *Twombly,* all that is required is a "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease." *Id.* at 2200. While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need. The *Erickson* decision had to do with only the first element, not the second element. *Id.* at 2199-2200. In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication. *Id.* This point of law is hardly a novel one. For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e .g., Rose v. Alvees,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept.9, 2004); *Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan.23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

38    *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

39    *Hernandez,* 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

40    *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] *pro se* complaint ... must be held to less stringent standards than formal pleadings drafted by lawyers ....") [internal quotation marks and citation omitted];

Robles v. Bleau, Not Reported in F.Supp.2d (2008)
Case 9:17-cv-01303-BKS-TWD    Document 38    Filed 12/06/18    Page 53 of 62
2008 WL 4693153

*McEachin v. McGinnis,* 357 F.3d 197, 200 (2d Cir.2004) ("[W]hen the plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.") [citation omitted].

41    "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov.17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. *See Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

42    *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

43    *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) [internal quotation and citation omitted]; *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

44    *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

45    *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2, n. 14 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5, n. 34 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4, n. 30 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.,* 03-CV-0407, 2006 WL 2794415, at *5, n. 18 (N.D.N.Y. Sept., 26, 2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver,* 03-CV-0912, 2006 WL 2799417, at *4, n .16 (N.D.N.Y. Sept. 26, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

46    *See Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug.12, 2008) ("[T]he obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") [citation omitted].

47    *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8] ); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691] [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

48    *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

49    *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980); *accord, Standley v. Dennison,* 05-CV-1033, 2007 WL 2406909, at *6, n. 27 (N.D.N.Y. Aug.21, 2007) (Sharpe, J., adopting report-recommendation of Lowe,

M.J.); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F.Supp.2d 305, 307 (W.D.N.Y.2007); *Cosby v. City of White Plains,* 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb.9, 2007); *Lopez v. Wright,* 05-CV-1568, 2007 WL 388919, at *3, n. 11 (N.D.N.Y. Jan.31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

50    *McGinty v. State of New York,* 251 F.3d 84, 100 (2d Cir.2001) [citation omitted]; *see also* Fed.R.Civ.P. 12(h)(3).

51    42 U.S.C. § 1983 [emphasis added].

52    *See, supra,* note 44 of this Report-Recommendation.

53    *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron,* 996 F.2d 1439, 1441 (2d Cir.1993) ( "[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.... As such, it is no different from a suit against the State itself.... We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham,* 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity."); *see also Holloway v. Selsky,* 05-CV-0501, 2007 WL 433375, at *4 (N.D.N.Y. Feb.6, 2007) (Sharpe, J.) [citing cases].

54    *See, infra,* note 41 of this Report-Recommendation (citing cases).

55    The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis* ] at any time if the court determines that ... the action ... is frivolous or malicious[,] ... fails to state a claim on which relief may be granted[,] ... or ... seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall ... dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted ...."

56    As explained above in Part II of this Report-Recommendation, a dismissal for failure to state a claim may be based not only on a successful challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2), but also on a successful challenge to the legal cognizability of the claims asserted in the pleading. *See, supra,* notes 26 and 27 of this Report-Recommendation.

57    *Farmer v. Brennan,* 511 U.S. 825, 827, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness ....") [citation omitted]; *accord, Koehl v. Greene,* 06-CV-0478, 2007 WL 2846905, at *17, n. 98 (N.D.N.Y. Sept.26, 2007) (Kahn, J.), *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *15, n. 124 (N.D.N.Y. Jan.23, 2007) (Kahn, J.), *Salaam v. Adams,* 03-CV-0517, 2006 WL 2827687, at *10, n. 59 (N.D.N.Y. Sept.29, 2006) (Kahn, J.).

58    In addition, it is worth noting that Plaintiff's explanation to Defendant Bleau consisted of a statement that Plaintiff could not urinate because of his prostate *medication,* not because of his prostate *condition. See, supra,* Part I.A. of this Report-Recommendation. As a result, Defendant Bleau would not have become *aware* of the reason for Plaintiff's inability to

urinate (which Plaintiff now alleges was his prostate *condition,* not his prostate *medication* ), even if Defendant Bleau had remained in Plaintiff's presence and listened to his explanation.

59    *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo,* 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr.9, 1998) (Pooler, J .) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.... Disagreement with prescribed treatment does not rise to the level of a constitutional claim.... Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate.... Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].").

60    *See, supra,* note 44 of this Report-Recommendation.

61    *Accord, Lugo v. Van Orden,* 07-CV-0879, 2008 U.S. Dist. LEXIS 56707, at *7, 2008 WL 2884925 (N.D.N.Y. July 23, 2008) (McAvoy, J.); *Darvie v. Countryman,* 08-CV-0715, 2008 U.S. Dist. LEXIS 60931, 2008 WL 3286250 (N.D.N.Y. Aug. 7, 2008) (Sharpe, J.), *adopting* 2008 U.S. Dist. LEXIS 52797, at *18, n. 5, 2008 WL 2725071 (N.D.N.Y. July 10, 2008) (Lowe, M.J.); *Anderson v. Banks,* 06-CV-0625, 2008 U.S. Dist. LEXIS 60896, at *16-17, 2008 WL 3285917 (N.D.N.Y. May 19, 2008) (Homer, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 60932, 2008 WL 3285917 (N.D.N.Y. Aug. 6, 2008) (Sharpe, J.); *Stewartson v. Almstead,* 04-CV-1097, 2008 U.S. Dist. LEXIS 22178, at *7, 2008 WL 783367 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *McEachin v. Goord,* 06-CV-1192, 2008 U.S. Dist. LEXIS 27479, at *12, 2008 WL 1788440 (N.D.N.Y. Feb. 8, 2008) (Treece, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 31879, 2008 WL 1788440 (N.D.N.Y. Apr. 17, 2008) (Hurd, J.); *Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *27, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 23065, 2007 WL 956941 (N.D.N.Y. March 29, 2007) (Kahn, J.); *Madera v. Goord,* 103 F.Supp.2d 536, 542 (N.D.N.Y.2000) (Kahn, J., adopting Report-Recommendation by Di Bianco, M.J.).

62    *See, supra,* note 44 of this Report-Recommendation.

63    *See, e.g., Spence v. Senkowski,* 91-CV-0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr.17, 1998) (McCurn, J.) (180 days that plaintiff spent in S.H.U., where he was subjected to numerous conditions of confinement that were more restrictive than those in general population, did not constitute atypical and significant hardship in relation to ordinary incidents of prison life); *accord, Husbands v. McClellan,* 990 F.Supp. 214, 217-19 (W.D.N.Y.1998) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Warren v. Irvin,* 985 F.Supp. 350, 353-56 (W.D.N.Y.1997) (161 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Ruiz v. Selsky,* 96-CV-2003, 1997 WL 137448, at *4-6 (S.D.N.Y.1997) (192 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Horne v. Coughlin,* 949 F.Supp. 112, 116-17 (N.D.N.Y.1996) (Smith, M.J.) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Nogueras v. Coughlin,* 94-CV-4094, 1996 WL 487951, at *4-5 (S.D.N.Y. Aug.27, 1996) (210 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Carter v. Carriero,* 905 F.Supp. 99, 103-04 (W.D.N.Y.1995) (270 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population).

64    *Jackson v. Onondaga County,* 05-CV-1393, 2008 U.S. Dist. LEXIS 64930, at *40 & n. 46, 549 F. Supp. 2d 204 (N.D.N.Y. Jan. 8, 2008) (Lowe, M.J.) [citations omitted], *adopted on* de novo *review by* 05-CV-1393, 2008 U.S. Dist. LEXIS 22175, 2008 WL 782655 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *see also Martin v. Mitchell,* 92-CV-0716, 1995 U.S. Dist. LEXIS 19006, at *10-12, 1995 WL 760651 (N.D.N.Y. Nov. 24, 1995) (McAvoy, C.J.) (rejecting plaintiff's assertion that prison disciplinary hearing officer "had a duty to investigate the identity of [a correction officer identified by the plaintiff merely as] 'Budd' and call him to testify"); *Hampton v. McGinnis,* 89-CV-6344, 1992 U.S. Dist. LEXIS 15696, at *6, 1992 WL 309553 (S.D.N.Y. Oct. 15, 1992) ("[I]t was not [the disciplinary hearing officer's] duty to investigate [the prisoner's assault] claim, and plaintiff was not precluded from offering his own evidence on that subject."); *cf. Kingsley v. Bureau of Prisons,* 937 F.2d 26, 31 (2d Cir.1991) (under circumstances, a hearing officer did have a duty to identify the name of the plaintiff's desired witness because [1] the plaintiff had an "especially compelling" need for the witness, [2] the witness's identity was "readily available" to the hearing officer, [3] the plaintiff had arrived at the prison only five days earlier, [4] fulfilling the request would not have delayed the imposition of "swift discipline," and [5] "no other institutional objective was implicated").

65    *See* *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ("The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' *of the United States.*") (emphasis added); *Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985) ("Recovery under 42 U.S.C. § 1983 ... is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or *federal* statutory right ....") (citation omitted; emphasis added); *Fluent v. Salamanca Indian Lease Auth.,* 847 F.Supp. 1046, 1056 (W.D.N.Y.1994) ("The initial inquiry in a § 1983 action is whether the Plaintiff has been deprived of a right 'secured by the Constitution and laws' *of the United States.*") [emphasis added].

66    *See* *Doe v. Conn. Dept. of Child & Youth Servs.,* 911 F.2d 868, 869 (2d Cir.1990) ("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim."); *Patterson,* 761 F.2d at 891 ("[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983 ....") (citation omitted); *Murray v. Michael,* 03-CV-1434, 2005 WL 2204985, at * 10 (N.D.N.Y. Sept.7, 2005) (DiBianco, M.J.) ("[A]ny violations of state regulations governing the procedures for disciplinary hearings ... do not rise to the level of constitutional violations.") (citation omitted); *Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.' ") (citing *Russell v. Coughlin,* 910 F.2d 75, 78 n. 1 [2d Cir.1990] ).

67    *See* *Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) (citation omitted); *Lopez v. Reynolds,* 998 F.Supp. 252, 259 (W.D.N.Y.1997).

68    *See* *Farinaro v. Coughlin,* 642 F.Supp. 276, 280 (S.D.N.Y.1986).

69    *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at * 18 n. 8 (S.D.N.Y. Sept.30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; s*ee also Murr v. U.S.,* 200 F.3d 895, 902, n. 1 (6th Cir.2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley,* 28 F.3d 532, 535 (5th Cir.1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] ... Respondent has waived procedural default ... objection [ ].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.,* 863 F.2d 633, 638-39 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty,* 977 F.2d 1347 (9th Cir.1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir.1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

---

**End of Document**                                        © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:17-cv-01303-BKS-TWD    Document 38    Filed 12/06/18    Page 57 of 62

Shaw v. Ortiz, Not Reported in Fed. Supp. (2016)

2016 WL 7410722

2016 WL 7410722
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Justin SHAW, Plaintiff,
v.
C.O. ORTIZ, Defendant.

Case No. 15-CV-8964 (KMK)
|
Signed 12/21/2016

**Attorneys and Law Firms**

Justin Shaw, Elmira, NY, Pro Se Plaintiff.

David J. Galalis, Esq., New York State Office of the Attorney General, New York, NY, Counsel for Defendant.

OPINION & ORDER

KENNETH M. KARAS, District Judge:

**\*1** Pro se Plaintiff Justin Shaw ("Plaintiff") brings this Action pursuant to 42 U.S.C. § 1983 against Correction Officer Benjamin Ortiz ("Defendant"), alleging that Defendant physically assaulted him while he was incarcerated at the Fishkill Correctional Facility. Before the Court is Defendant's Motion To Dismiss the Complaint (the "Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 13.) For the following reasons, Defendant's Motion is denied.

I. Background

A. Factual Background

The following facts are drawn from Plaintiff's Complaint and are taken as true for the purposes of resolving the instant Motion.

On June 27, 2015, Defendant was escorting Plaintiff to the first floor holding pen of the Fishkill Correctional Facility because Plaintiff had an incident with his cellmate. (Compl. ¶ II.D (Dkt. No. 2).) As Plaintiff exited his cell, Defendant ordered Plaintiff to put his hands on the wall so Defendant could pat frisk him. (Id.) During the pat frisk, Defendant pinched Plaintiff's rib cage and tackled Plaintiff to the floor. (Id.) Defendant ordered Plaintiff to stop resisting even though Plaintiff was not resisting. (Id.) Plaintiff received a misbehavior report as if he were the aggressor in this incident, but was found not guilty. (Id.)

Plaintiff alleges that he filed a grievance regarding Defendant's conduct, but he did not receive a response. (Id. ¶¶ IV.D-F.) Plaintiff spoke to the mental health staff about the alleged abuse and reported everything to "I. Cy." (Id. ¶¶ IV.F.3, G.1.) He went so far as to write letters to the grievance sergeant and the superintendent of the prison but still received no response. (Id. ¶¶ IV.D-G, I.) Plaintiff alleges that correction officers were misplacing his mail so that he could not file a grievance. (Id. ¶ IV.I.)

B. Procedural History

Plaintiff commenced this Action against Defendant on November 13, 2015. (Dkt. No. 2.) Defendant filed the instant Motion, and accompanying papers, on May 2, 2016. (See Dkt. Nos. 13-14.) Plaintiff has not filed an opposition.

II. Discussion

A. Standard of Review

The Supreme Court has held that, although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original). Instead, the Supreme Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563. A plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. But if a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.; see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the

Shaw v. Ortiz, Not Reported in Fed. Supp. (2016)
Case 9:17-cv-01303-BKS-TWD    Document 38    Filed 12/06/18    Page 58 of 62
2016 WL 7410722

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

**\*2**  "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N. Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

Where, as here, a plaintiff proceeds pro se, the court must "construe[ ] [his complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

### B. Analysis

Defendant argues that Plaintiff has failed to exhaust his administrative remedies and therefore the Complaint must be dismissed. (Def.'s Mem. of Law in Supp. of Mot. To Dismiss ("Def.'s Mem.") 2-5 (Dkt. No. 14).)

### 1. Inmate Grievance Procedures

As a general matter, the New York State Department of Corrections and Community Supervision ("DOCCS") Inmate Grievance Program ("IGP") outlines the procedures that apply to grievances filed by inmates in New York State correctional facilities. The IGP provides for a three-step grievance process. (*See* Def.'s Mem. 3-4 (citing 7 N.Y.C.R.R. § 701 *et seq.*).) *See also Abdallah v. Ragner*, No. 12-CV-8840, 2013 WL 7118083, at \*2 (S.D.N.Y. Nov. 22, 2013) (noting that "[DOCCS] provides an administrative remedy for many prisoners' claims," which is "a grievance system available to prisoners in custody at state prisons, such as Fishkill." (citing 7 N.Y.C.R.R. § 701.1(c))). Under the framework used in typical cases, an inmate must first file a complaint at the facility where the inmate is housed within 21 calendar days of an alleged occurrence. 7 N.Y.C.R.R. § 701.5(a)(1). Despite this time limit, a grievant may request an exception, *see id.*, based on "mitigating circumstances," *id.* § 701.6(g)(1)(i)(a), but no exception will be granted if the request was made more than 45 days after the alleged occurrence, *id.* Upon receipt, the grievance clerk consecutively numbers and logs each grievance. *Id.* § 701.5(a)(2). Additionally, once filed, the representatives of the Inmate Grievance Resolution Committee ("IGRC") have up to 16 calendar days to resolve it informally. *Id.* § 701.5(b)(1). If the matter is not satisfactorily resolved, the IGRC conducts a hearing to either answer the grievance or make a recommendation to the superintendent, *id.* § 701.5(b)(2)(i), which is scheduled within 16 days after receipt of the grievance, *id.* § 701.5(b)(2)(ii). The IGRC's decision "must be communicated to the grievant ... in writing ... within two working days" of the hearing. *Id.* § 701.5(b)(3)(i).

**\*3**  The second step in the tripartite framework is for the grievant or any direct party to appeal the IGRC's decision to the prison superintendent within seven calendar days after receipt of the written response, although the appealing party can seek an exception to the time limit, *id.* § 701.5(c)(1), again based on mitigating circumstances, *id.* § 701.6(g)(1)(i)(*b*), provided that the request was not made more than 45 days after the date of the decision, unless the late appeal asserts a failure to implement the IGRC's decision, *see id.* Generally, the superintendent has 20 days from the date the appeal was received to render a decision. *Id.* §§ 701.5(c)(3)(i)-(ii).

The third and final step is to appeal the superintendent's decision to the Central Office Review Committee ("CORC"), which the prisoner must do within seven days of the superintendent's written response to the grievance.

Shaw v. Ortiz, Not Reported in Fed. Supp. (2016)
Case 9:17-cv-01303-BKS-TWD   Document 38   Filed 12/06/18   Page 59 of 62
2016 WL 7410722

*Id.* § 701.5(d)(1)(i). Here, too, an inmate may request an exception to the time limit, *id.*, if based on mitigating circumstances and if made within 45 days of the date of the decision, unless, again, the late appeal asserts a failure to implement the decision, *id.* § 701.6(g)(1)(i)(*b*).

The IGP provides for an expedited grievance procedure for allegations of harassment. *Id.* § 701.8. In those cases, "grievances are forwarded directly to the superintendent for review, skipping the first step of review by the IGRC." (Def.'s Mem. 3.) "If the superintendent fails to respond within the required 25 calendar day time limit the grievant may appeal his/her grievance to [the] CORC" 7 N.Y.C.R.R. § 701.8(g).

### 2. Prison Litigation Reform Act Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement applies to all personal incidents while in prison, *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes"); *see also Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (same), and includes actions for monetary damages despite the fact that monetary damages are not available as an administrative remedy, *Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding exhaustion is required "regardless of the relief offered through administrative procedures"). Moreover, the PLRA mandates for " 'proper exhaustion'— that is, 'using all steps that the agency holds out, and doing so properly,' ... [which] entails ... 'completing the administrative review process in accordance with the applicable procedural rules.' " *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (alteration omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88, 90 (2006)); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

Prisoners in the custody of DOCCS must exhaust all levels of the IGP process even if they do not receive a response

from the IGRC or superintendent. *See Dabney v. Pegano*, 604 Fed.Appx. 1, 4 (2d Cir. 2015) ("The IGP provides a clear timeline for appealing grievances to the CORC, which applies even when the prisoner does not receive a timely decision from the IGRC or a superintendent. [The] [p]laintiff therefore had an unimpeded path to the CORC, notwithstanding his claims that the Great Meadow grievance clerk failed to process his complaint and that the Clinton superintendent ignored his appeal." (citation omitted)); *see also Mena v. City of New York*, No. 13-CV-2430, 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016) ("[T]he law is well-settled that an inmate's failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust administrative remedies." (internal quotation marks omitted)); *Wallace v. Fisher*, No. 13-CV-1208, 2015 WL 9275001, at *2 (N.D.N.Y. Dec. 18, 2015) ("After carefully reviewing the case law, the [c]ourt finds that the weight of authority (and the better-reasoned authority) answers th[e] question [of whether the IGRC's nonresponse to a grievance must be appealed to the superintendent where the plaintiff's grievance was never assigned a grievance number] in the affirmative."). [1] Thus, if a plaintiff does not receive a response from the IGRC, he normally must file an appeal with the prison superintendent and then with the CORC to fully exhaust his grievance. Indeed, the IGP explicitly states that "matters not decided within the time limits may be appealed to the next step." 7 N.Y.C.R.R. § 701.6(g)(2); *see also id.* § 701.8(g) (same for expedited harassment grievances).

**\*4** The PLRA does, however, "contain[ ] its own, textual exception to mandatory exhaustion." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). The Supreme Court recently explained:

> Under § 1997e(a), the exhaustion requirement hinges on the "availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones. And that limitation on an inmate's duty to exhaust ... has real content.... [A]n inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of."

*Id.* at 1858-59 (quoting *Booth*, 532 U.S. at 738).

There are "three kinds of circumstances in which an administrative remedy, although officially on the books,

Shaw v. Ortiz, Not Reported in Fed. Supp. (2016)
Case 9:17-cv-01303-BKS-TWD   Document 38   Filed 12/06/18   Page 60 of 62
2016 WL 7410722

is not capable of use to obtain relief." *Id.* at 1859. First, an "administrative procedure is unavailable when ... it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. These three circumstances "do not appear to be exhaustive," *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), but they do "guide the Court's inquiry," *Khudan v. Lee*, No. 12-CV-8147, 2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8, 2016).

A plaintiff need not plead that one of these three circumstances exists or that he did in fact exhaust his administrative remedies because the "[f]ailure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement." *Williams*, 829 F.3d at 122. Defendant bears the burden of proving that Plaintiff failed to exhaust available administrative remedies. *McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003) ("[The] defendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity."); *see also Williams*, 829 F.3d at 122 ("[I]nmates are not required to specifically plead or demonstrate exhaustion in their complaints." (internal quotation marks omitted)). Thus, a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted only if "nonexhaustion is clear from the face of the complaint," *Lovick v. Schriro*, No. 12-CV-7419, 2014 WL 3778184, at *4 (S.D.N.Y. July 25, 2014) (alterations and internal quotation marks omitted); *see also Lee v. O'Harer*, No. 13-CV-1022, 2014 WL 7343997, at *3 (N.D.N.Y. Dec. 23, 2014) ("Dismissal under Rule 12(b)(6) for failure to exhaust is appropriate if such failure is evidenced on the face of the complaint and incorporated documents."); *Sloane v. Mazzuca*, No. 04-CV-8266, 2006 WL 3096031, at *4 (S.D.N.Y. Oct. 31, 2006) ("[B]y characterizing nonexhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss." (internal quotation marks omitted)).

**\*5** When non-exhaustion is not clear from the face of the complaint, a defendant's motion can be converted to a motion for summary judgment "limited to the narrow issue of exhaustion and the relatively straightforward question[ ] [of] ... whether remedies were available." *Stevens v. City of New York*, No. 12-CV-1918, 2012 WL 4948051, at *3 (S.D.N.Y. Oct. 11, 2012) (internal quotation marks omitted); *see also Rambert v. Mulkins*, No. 11-CV-7421, 2014 WL 2440747, at *6 (S.D.N.Y. May 30, 2014) (same); *Smalls v. Jummonte*, No. 08-CV-4367, 2010 WL 3291587, at *3 (S.D.N.Y. Aug. 13, 2010) (same). When doing so in the context of an action brought by a pro se inmate, the potential consequences of a motion for summary judgment as well as the procedural requirements for responding to one must first be explained, and the Court must also allow Plaintiff the opportunity to take discovery. *See Hernández v. Coffey*, 582 F.3d 303, 307-08 (2d Cir. 2009) (noting that "[i]n the case of a pro se party ..., notice is particularly important because the pro se litigant may be unaware of the consequences of his failure to offer evidence bearing on triable issues" and that, "[a]ccordingly, pro se parties must have unequivocal notice of the meaning and consequences of conversion to summary judgment" (alteration, italics, and internal quotation marks omitted)). As a result, in the PLRA exhaustion context, courts typically have insisted upon limited discovery before converting a motion to dismiss for failure to exhaust administrative remedies into a motion for summary judgment. *See, e.g., Lovick*, 2014 WL 3778184, at *5 (observing that "when converting a Motion to Dismiss into a Motion for Summary Judgment under Fed. R. Civ. P. 12(d), notice to the parties is mandated, particularly when a pro se litigant is involved," and accordingly "permit[ting] the parties to engage in limited discovery confined solely to the issue of administrative exhaustion" (italics omitted)); *Pratt v. City of New York*, 929 F. Supp. 2d 314, 319 (S.D.N.Y. 2013) (noting that the court could convert motion to dismiss into motion for summary judgment on issue of PLRA exhaustion but observing that, if it were to do so, "the parties would be entitled to an opportunity to take discovery and submit additional relevant evidence, and the parties have not yet been allowed such an opportunity"); *Stevens*, 2012 WL 4948051, at *7 (noting that it was appropriate before converting the motion to dismiss into a summary judgment motion to permit discovery limited to the issue of administrative exhaustion).

Shaw v. Ortiz, Not Reported in Fed. Supp. (2016)

Case 9:17-cv-01303-BKS-TWD    Document 38    Filed 12/06/18    Page 61 of 62

2016 WL 7410722

### 3. Analysis

In his Complaint, Plaintiff alleges that he filed a grievance, but did not receive a response. (*See* Compl. ¶¶ IV.E-G, I.) He did not thereafter file an appeal with the prison superintendent or to the CORC as required by the IGP. *See, e.g., Dabney*, 604 Fed.Appx. at 4 ("The IGP provides a clear timeline for appealing grievances to the CORC, which applies even when the prisoner does not receive a timely decision from the IGRC or a superintendent."). Instead, Plaintiff spoke to the prison's mental health staff and "I. Cy.," (Compl. ¶¶ IV.F.3, G.1), and wrote letters to the grievance sergeant and the superintendent, (*id.* ¶ IV.I). Even if the Court assumes that Plaintiff's letter to the superintendent was sufficient to file an appeal with the superintendent, Plaintiff does not allege that he filed an appeal with the CORC after the superintendent ignored the letter. Thus, the letter written to the superintendent does not cure Plaintiff's failure to fully exhaust his administrative remedies. *See Franco v. Monroe*, No. 09-CV-8787, 2012 WL 3552673, at *3 (S.D.N.Y. Aug. 13, 2012) (finding that even if the plaintiff filed an expedited grievance with the superintendent, he failed to exhaust administrative remedies because he did not appeal the grievance to the CORC); *see also JCG v. Ercole*, No. 11-CV-6844, 2014 WL 1630815, at *7 (S.D.N.Y. Apr. 24, 2014) ("[E]ven if [the] [p]laintiff's letter to the [s]uperintendent could be construed as a proper step in the grievance process, [the] [p]laintiff still failed to complete the final exhaustion requirement—appealing the matter to the CORC."), *adopted by* 2014 WL 2769120 (S.D.N.Y. June 18, 2014). Because Plaintiff's grievance "has not been appealed to and decided by the highest body in the administrative process, [he] cannot be said to have exhausted his administrative remedies." *Jones v. Allen*, No. 08-CV-4003, 2010 WL 3260081, at *2 (S.D.N.Y. Aug. 9, 2010).

Nonetheless, the Court cannot determine "from the face of the complaint," *Lovick*, 2014 WL 3778184, at *4 (internal quotation marks omitted), whether the prison's administrative remedies were in fact "available." Plaintiff alleges that the correction officers "knew [he] was trying to grieve the issues [identified in the Complaint] so they must have been misplacing [his] mail." (Compl. ¶ IV.I.) Accepting this allegation as true, as the Court must, *Erickson*, 551 U.S. at 94, administrative remedies may have been unavailable to Plaintiff based on the third

type of circumstance identified by the Supreme Court in *Ross*, i.e., "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," *Ross*, 136 S. Ct. at 1860.[2] While true that Plaintiff has not pled that he did attempt to file an appeal, if correction officers were misplacing Plaintiff's mail, it is unclear whether any such appeal would have been properly filed—possibly rendering administrative remedies unavailable. Therefore, Defendant's Motion is denied without prejudice to refiling a motion for summary judgment on Plaintiff's failure to exhaust administrative remedies after the Parties have conducted limited discovery. The Parties must focus on whether Plaintiff filed a grievance with the IGRC, whether correction officers misplaced Plaintiff's mail, and whether administrative remedies were available to Plaintiff. The Court will hold a conference to set a discovery schedule.

**\*6** The Court does note that the factual scenario here is different from that in *Williams* where the Second Circuit found that part of the IGP's regulatory scheme was "so opaque and so confusing that ... no reasonable prisoner c[ould] use" it. 829 F.3d at 124 (internal quotation marks omitted) (first alteration in original). In *Williams*, the plaintiff was housed in a prison's special housing unit. According to the regulations pertaining to prisoners housed in a special housing unit, *see* 7 N.Y.C.R.R. § 701.7, the plaintiff could file a grievance by giving it to a correction officer who was then supposed to forward it to the grievance office. *Id.* at 120-21. The plaintiff alleged that he gave his grievance to a correction officer to file, but the correction officer never filed it. *Id.* at 124. The court found that the "regulations simply d[id] not contemplate the situation in which [the plaintiff] found himself"—that he was in the special housing unit and the correction officer never filed the grievance—"making it practically impossible for him to ascertain whether and how he could pursue his grievance." *Id.; see also id.* at 126 ("In sum, the regulations plainly do not describe a mechanism for appealing a grievance that was never filed."). Here, those circumstances are not present. *See Mena*, 2016 WL 3948100, at *5 (finding that the Second Circuit's decision in *Williams* "hinged on the 'extraordinary circumstances' specific to the case before it"). Plaintiff alleges that he filed his grievance, but never received a response. (Compl. ¶ IV.F.) The IGP specifies that a prisoner may appeal a grievance "to the next step" if it is "not decided within the [applicable] time limits." 7 N.Y.C.R.R. § 701.6(g)(2); *id.* § 701.8(g) (same for expedited harassment grievance);

Shaw v. Ortiz, Not Reported in Fed. Supp. (2016)

Case 9:17-cv-01303-BKS-TWD    Document 38    Filed 12/06/18    Page 62 of 62

2016 WL 7410722

see also *Rodriguez v. Reppert*, No. 14-CV-671, 2016 WL 6993383, at *3 (W.D.N.Y. Nov. 30, 2016) (The grievance "regulations expressly contemplate ... that, absent an extension of time, 'matters not decided within the time limits may be appealed to the next step.' 7 N.Y.C.R.R. § 701.6(g)(2). In other words, a failure to render a timely decision at a lower level in the grievance process gives a prisoner the option of appealing that inaction to the next level. A prisoner who does not avail himself of that option will almost certainly find his lawsuit dismissed for failure to exhaust."). Thus, the IGP contemplates the circumstances in which Plaintiff found himself because the failure to render a timely decision at a lower level does not relieve a prisoner of the obligation to appeal to the next level. [3]

C. Plaintiff's Letter to the Court

On August 1, 2016, the Court received a letter from Plaintiff stating that he did not understand what was happening in this case and asking why he had not been brought into court or been appointed a public defender. (Dkt. No. 18.) The Court does not normally bring detained parties into a courtroom in civil cases. Nor is there a constitutional right to counsel in civil cases. However, the Court will schedule a telephone conference in this case. Also, if Plaintiff wants to make an application to have the Court appoint an attorney, he may do so.

III. Conclusion

For the foregoing reasons, Defendant's Motion is denied. The Court will hold a telephone conference on January 19, 2017, at 10 a.m. to set a discovery schedule. [4] After discovery is completed. Defendant may file a promotion letter with the Court seeking leave to file a motion for summary judgment. The Clerk of Court is respectfully directed to terminate the pending Motion. (Dkt. No. 13.)

SO ORDERED.

All Citations

Not Reported in Fed. Supp., 2016 WL 7410722

Footnotes

1    Some courts have held that prisoners may have exhausted their administrative remedies even where they do not utilize the appeal process when the prison fails to record or assign them grievance numbers because "there is nothing on the record for the next administrative level to review." *Johnson v. Tedford*, 616 F. Supp. 2d 321, 326 (N.D.N.Y. 2007). The Court need not address the validity of these cases at this point in the litigation. Plaintiff has not alleged that his grievance was lost or misplaced.

2    The Court assumes for purposes of this Opinion that the administrative remedies at the Fishkill Correctional Facility do not "operate[ ] as a simple dead end." *Ross*, 136 S. Ct. at 1859.

3    While it is unclear from the Complaint, it is possible that Plaintiff was housed in Fishkill's special housing unit at the time he was allegedly assaulted by Defendant. (*See* Compl. ¶ IV.A (stating that Plaintiff was confined in "Fishkill Shu-200" at the time of the alleged assault).) If discovery reveals that Plaintiff's grievance was never filed and he was housed in "Shu-200" when he attempted to file it, Defendant could be hard pressed to distinguish *Williams* in a motion for summary judgment.

4    Defense counsel is expected to appear in person and to make all necessary arrangements for Plaintiff to appear by phone.

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.